# CHARLESTON.

Ira Claude Chambers v. Princeton Power Company.

Submitted January 30, 1923. Decided April 24, 1923.

1. Negligence—Street Railroads—*Negligence and Contributory Negligence for Jury.*

    Ordinary negligence and contributory negligence are mixed questions of law and fact for the jury's determination. The evidence in this case does not call for an exception to the general rule. (p. 602).

2. Street Railroads—*Degree of Care Required.*

    A street railway company is under a high degree of care while operating cars over its tracks, to keep careful lookout for those using the street, and to employ such means as may be necessary or available to prevent injury to them. (p. 601).

3. SAME—*Rate of Speed Held Negligence Per Se.*

It is negligence per se for a street railway company to operate its cars over the streets of a municipality in the night time at a greater rate of speed than will enable the motorman in charge of the car to stop it within the distance covered by its own lights to avoid collision with other vehicles on the track. (p. 601).

Error to Circuit Court, Mercer County.

Action by Ira Claude Chambers against the Princeton Power Company. Judgment for plaintiff, and defendant brings error.

*Affirmed.*

*Sanders, Crockett & Fox,* for plaintiff in error.
*John Kee* and *John R. Pendleton,* for defendant in error.

LITZ, JUDGE:

We are called upon to reverse the judgment of the circuit court of Mercer county, rendered on the verdict of a jury in favor of plaintiff against defendant, for $1250.00 as damages for personal injury sustained by plaintiff, resulting from the collision of defendant's street car with wagon driven by plaintiff.

The defendant owns and operates a street car system in the City of Bluefield, West Virginia, and the adjoining town of Graham, Virginia. Its car line, connecting the two municipalities, occupies the middle portion of the main street of the town of Graham. The injury to the plaintiff occurred on the main street in the outskirts of this town near the corporate limits of Bluefield.

Plaintiff, on the occasion of the injury, September 11th, 1921, was driving a team and wagon along the main street of Graham in the direction of Bluefield about eleven o'clock in the night time. The wagon was laden with boxes, tubs and other bulky freight, on account of which the plaintiff was unable, from his sitting position, to see to the rear. At the place of the collision, extending along the right side of the street in the direction plaintiff was going, was an excavation for a sewer line, the dirt from which had been piled near the car tracks, making it necessary for the plaintiff to drive

across the tracks from the right to the left side of the street. Plaintiff says that after driving across the tracks he observed an automobile approaching from the front, and realizing there would not be room to pass between it and the car line, turned back on to the tracks; and that being thus compelled to occupy a portion of the tracks by reason of the ditch and dirt on the right and automobile to the left, after proceeding 50 or 75 feet the wagon was struck from the rear by the street car. The impact demolished the wagon, scattered its freight, and hurled plaintiff over the team, across the street against a fence. The collision occurred near the center of a deep sag or depression in the street several hundred feet in length. Evidence in behalf of the plaintiff shows that the incline from this point to the summit in the direction the street car was coming was 300 or 400 feet long, and that the motorman on the car could have seen the wagon at that distance ahead. The motorman, however, claims that it was only about 175 feet from the summit to the point of the collision and that, on account of the curvature of the tracks, he could not have seen the plaintiff by the headlight on the car for more than 100 feet.

The plaintiff, just before crossing the tracks, had passed the street car on its way from Bluefield to the terminus of the car line in Graham, which is about one-half mile from the place of collision. The defendant's cars making the trip from Bluefield to Graham ordinarily return promptly. The street car approached without signal or warning and no light was displayed on plaintiff's wagon. Passengers on the car testify it did not check until after the collision.

The plaintiff, according to testimony in his behalf, sustained many bruises over his body. His back was hurt and one ankle severely injured, the bone thereof being fractured or bruised. He was "laid up" for some days, and his earning capacity permanently reduced.

The defendant's twelve assignments of error involve the rulings of the trial court on instructions to the jury, and are predicated upon the theories:

(a) That the defendant was not guilty of actionable negligence;

(b)    That the plaintiff was guilty of contributory negligence barring his right of recovery; and,

(c)    That the verdict is excessive.

It is argued in denial of negligence on the part of the defendant that the street car was running at an ordinary and moderate rate of speed, and that the motorman's view of the wagon was obstructed, first, by the "bluff" around which the street car line runs and, immediately before the accident, by the light of a passing automobile blinding his vision, so that he could not see the wagon until too close to avoid the collision. The motorman testified he was running about 18 miles per hour. If this was the usual and ordinary rate of speed, and conditions were such by reason of the bluff and blinding light of a passing automobile that he could not see, then it was his duty to slacken speed and use signals until conditions would permit his vision to safeguard his passengers and persons on the track.

"It is negligence to run an electric street car along a narrow and unlighted alley on a dark night at a rate of speed that will not permit its stoppage within the distance covered by its own headlight." Nellis on Street Railways, sec. 394; *Gilmore* v. *Federal St. & P. V. Pass Ry. Co.* (Pa.) 25 Atl. 651.

The motorman not only knew the street was blocked to the right of the tracks, but also that there was not room to the left for vehicles to pass the approaching automobile. He was therefore charged with notice that any vehicle traveling in the direction he was going would be compelled to occupy the tracks at this place.

It is negligence to run a street car at such rate of speed that on a dark night a motorman cannot see a wagon on the tracks in front of the car in time to prevent a collision. Nellis on Street Railways, *Idem; Calumet El. R. Co.* v. *Lynholm,* 70 Ill. App. 371; *United Railway & El. Co.* v. *Seymour* (Md.) 48 Atl. 850.

A street railway company is under a high degree of care while operating cars over its tracks to keep a careful lookout for those using the street and to employ such means as may be necessary or available to prevent injury to them. *Prunty* v. *Traction Co.,* 90 W. Va. 195; *Dimmey* v. *Traction Co.,* 83 W. Va. 755.

Defendant also maintains that plaintiff was guilty of contributory negligence in driving his wagon on the tracks without a light, and so loaded as to obstruct his view of the street car from the rear; and cites in this connection the case of *Helvey* v. *Princeton Power Company*, 84 W. Va. 16. Neither the law nor the facts of that case, which involve an accident to an automobile at a public crossing on an interurban electric car line, can be considered as supporting defendant's position. The plaintiff there drove his machine on the crossing knowing of the car's approach. It is stated in the syllabus of the case that the recognized legal status and reciprocal duties, each towards the other, of an interurban railway company and a traveler on a rural highway at a public grade crossing are materially different from those prevailing in a municipality, the rights of the traveler ordinarily being subordinate to those of the company, in that to the latter is accorded priority of passage, the reciprocal rights and duties of the respective parties in such case being predicated upon that basis. The broad and well recognized distinction between the two cases is pointed out and discussed in the opinion.

The plaintiff at bar was justified in crossing the tracks, as the street car could not then have been in sight or hearing. And if the situation at the time of the accident was as claimed, he was powerless to protect himself.

The case of *Vincent* v. *Norton & T. St. Ry. Co.* (Mass.), 61 N. E. 822, holds that it was not negligence to drive a covered wagon in a public street containing street railway tracks, though the rear of the wagon was so closed with boxes and drawers that the driver could not see out behind through the interior.

It was also held in the case of *Tunnison* v. *Weadock* (Mich.), 89 N. W. 703, that although a traveler driving upon or in close proximity to the tracks of a street railway is bound to look ahead to see whether a car is liable to come in collision with him, it cannot be said as a matter of law that he is bound to be constantly looking backward for that purpose, so as to be free from negligence.

The question of plaintiff's contributory negligence was submitted to the jury under defendant's instructions Nos.

1 and 2. The first of these instructions states that if the collision was caused by the concurrent negligence of defendant's motorman and plaintiff, due to the failure of each to keep proper lookout, the plaintiff cannot recover; and the second informs the jury that the right of defendant to the use of so much of the public street as is occupied by its tracks is superior to that of persons using other vehicles or conveyances, and that if the injury resulted approximately from the negligence of plaintiff in entering upon the tracks of defendant, the verdict should be for the defendant.

The defendant complains of the court's refusal of its instructions Nos. 7, 8, 9, 10, 11, 12, 13 and 14, relating to the contributory negligence of the plaintiff. Some of these instructions are erroneous as imposing upon plaintiff, when encountered by the ditch and dirt blocking the right side of the street, the duty to have stopped his team by the wayside, and await the return of defendant's car, which was neither in sight nor hearing, before crossing the tracks; some are improper as holding the plaintiff guilty of negligence as a matter of law; and the remaining were properly refused as being covered by defendant's instructions Nos. 1 and 2.

There is also complaint that the trial court improperly refused defendant's instruction No. 6, which is as follows:

"The court instructs the jury that even though you find for plaintiff, you cannot consider anything of a speculative or conjectural nature as damages, such as what may occur in the future, mental worry, or time that may be lost in the future; you are bound and limited to what the facts show as of this time alone." This instruction is in effect covered by defendant's instruction No. 5, which states that the jury in fixing the damages are limited to the actual physical pain and suffering from the injuries received, and the inconvenience occasioned thereby, and that no damages for permanent injuries can be allowed. Besides it is erroneous in stating that the jury could not take into consideration future loss of time by the plaintiff on account of the injury. There is evidence tending to show that the injury sustained by the plaintiff is of a permanent nature.

Finding no errors in the rulings of the trial court, the judgment complained of is affirmed.          *Affirmed.*