# Richmond

REO WANDA WOODRUM, ADM'X v. BENJAMIN HOLLAND.

November 25, 1946.

Record No. 3121.

Present, Holt, C. J., and Hudgins, Gregory, Eggleston and Buchanan, JJ.

The opinion states the case.

*Phillips, Marshall & Blalock,* for the plaintiff in error.

*Jones, Blechman & Jones,* for the defendant in error.

HUDGINS, J., delivered the opinion of the court.

The administratrix of Fred C. Woodrum instituted this action against Benjamin Holland to recover damages for the wrongful death of decedent. When plaintiff completed the introduction of her testimony, the trial court sustained the motion of defendant to strike the evidence. From this ruling, plaintiff obtained this writ of error.

The question presented is whether the evidence for plaintiff was sufficient to sustain a verdict finding defendant guilty of gross negligence.

On December 8, 1945, defendant, with his wife seated next to him and Fred C. Woodrum seated on the extreme right, in a Chevrolet coupe, was driving south on Route 168 from Williamsburg to Newport News when his coupe collided with a freight car at the railway crossing, resulting in the death of Fred C. Woodrum. Plaintiff introduced no eyewitness to the accident and relies solely upon the physical facts to recover.

Route 168 extends north and south. The hard surface is 42 feet wide, divided into 4 traffic lanes of $10\frac{1}{2}$ feet each. The two outer lanes are concrete, the two inner lanes are constructed of tar and gravel. The Chesapeake & Ohio Railway operates a single-track railway from its main line on the west of the highway across it to Camp Peary on the east. "For some distance" north and south of the crossing the highway is straight and, approaching from the north, it is slightly downgrade. Three hundred feet north of the crossing and 4 feet west of the hard-surfaced portion of the highway is the usual railway crossing sign, $5\frac{1}{2}$ feet high, circular in shape, yellow in color and $2\frac{1}{2}$ feet in diameter. Ten feet north of the crossing and $8\frac{1}{2}$ feet

west of the hard surface, there is another railway sign 15 feet high. On this sign there are two red signal lights side by side, 7½ feet from the ground. They are operated by electrical controls attached to the rails and contact is made by trains approaching from either direction. These lights are 8 inches in diameter and face north. There are duplicate lights on the opposite side of the crossing, facing south.

Robert Herbert, the colored engineer on the freight train, stated that he was operating a Diesel engine shoving three freight cars from the main line of the Chesapeake & Ohio to Camp Peary—that is, the train was moving from west to east—at eight to ten miles an hour; that he was seated on his right or the south side of the engine watching the signal light at the crossing approximately 190 feet east of the moving engine; that he saw the white light facing him, which indicated that the crossing was clear, and he thought that this white light was attached to the red lights facing the highway, though he could not see the red lights flashing; that he continuously sounded his whistle; and that he suddenly received the signal from his brakeman, who was riding one of the freight cars, for an emergency stop. He stopped his train within 50 feet, before the first freight car cleared the highway.

B. C. Nicodemus, a State trooper who was called to investigate the accident, stated that when he arrived on the scene about 9:00 A. M., 40 minutes after the accident, he was informed that the train and the Chevrolet coupe had not been moved; that the Chevrolet coupe was facing east, parallel to and against the second freight car, at right angles across and about midway of the 42-foot wide highway; that the right front fender of the automobile had been torn off and was lying on the highway several feet in front of the coupe; that the left iron step was driven under the front end of the first freight car and rested on the grease box of the car wheel, indicating that the step had received the force of the blow of the automobile; and that no other

damage appeared to be done to either the freight car or the automobile.

There was no ice on the highway and the surface was damp but not unduly slippery. Fifty-two feet north of the crossing and on the right traffic lane there were marks on the highway indicating that brakes had been applied but not with sufficient force to make the wheels slide. Within ten feet of the track the coupe had made a sharp left turn. The red traffic signal lights were flashing. Fred C. Woodrum, the guest who had been seated on the extreme right side of the automobile, was dead and lying on the highway under the freight car.

Neither Mrs. Holland nor Benjamin Holland was injured.

Plaintiff contends that defendant was driving at a reckless rate of speed and not keeping a proper lookout and that he ignored the railway crossing signs and flashing lights. Plaintiff proved by the State trooper that the defendant stated to him, soon after his arrival on the scene, that he was driving about 25 miles an hour; that he applied his brakes as soon as he saw the red lights through the fog, which was rather dense; that just before the impact he made a sharp left turn; and that as he made the turn the right front of his automobile collided with the freight car. The defendant further stated that the reason Fred Woodrum was killed was that he opened the car door, jumped out and fell in front of the moving train.

The only witness, other than the defendant and his wife, who was in a position to see and know about the accident was the brakeman who was riding on the right hand side of the foremost freight car. He gave the signal to the engineer to stop the train, but whether this signal was given before or after the impact is not shown by the testimony. Under these circumstances, it may be assumed that if this witness had been called his testimony would have been adverse to the plaintiff.

Each side cites numerous Virginia cases dealing with gross negligence, beginning with *Boggs* v. *Plybon*, 157 Va. 30,

160 S. E. 77, and extending through *Keen* v. *Harman*, 183 Va. 670, 33 S. E. (2d) 197. The principles are well established and need not be repeated.

The burden was upon plaintiff to introduce evidence to show how and why the accident occurred. In this class of actions, plaintiff must establish not only the fact that defendant was negligent but that this negligence amounted to more than a mere failure to exercise ordinary care—that is, that the acts of defendant convicted him of heedless and reckless disregard of the rights of decedent. This conclusion must be based upon some fact or facts by which it can be ascertained by the jury and not left to conjecture, guess or random judgment upon mere supposition. The brief opinion of the trial judge dealt with the vital elements involved and is as follows:

"In cases of this sort, unless I am thoroughly convinced, I always like for the case to go to the jury for the jury to decide, where it is a close case, but as the court sees it, there is no evidence before the court that shows it was a case of gross negligence. The accident itself is no evidence of any negligence. The evidence is that he was driving along at about 25 miles an hour; there is evidence that there were tire marks not necessarily skid marks, but evidence of tire marks for a distance of some forty feet * * * . If it was a question of ordinary negligence, I think it should be a question on which to go to the jury, but where there must be gross * * * negligence, I cannot see that any evidence was produced at all on which the jury or court, either one, would be justified in concluding that there was gross negligence. For that reason I feel that I will have to strike the evidence."

*Affirmed.*