BLANCHE H. DODRILL

*v.*

SAMUEL HERSCHEL YOUNG

(No. 10896)

Submitted January 8, 1958. Decided April 1, 1958.

*Fitzpatrick, Marshall, Huddleston & Bolen, E. A. Marshall,* for plaintiff in error.

*Dodrill, Barrett & Dunbar, J. J. N. Quinlan,* for defendant in error.

HAYMOND, PRESIDENT:

In this action of trespass on the case, instituted in the Circuit Court of Cabell County, the plaintiff, Blanche H. Dodrill, a married woman, seeks to recover damages from the defendant, Samuel Herschel Young, for personal injuries sustained by her in a collision between a 1951 Packard sedan automobile owned and driven by the defendant, in which the plaintiff was riding as his guest, and a 1947 GMC one-ton truck driven by a man named Vanover on a public highway designated as United States Route No. 19 about five and one-half miles southwest of Claypool Hill in Russell County, Virginia, on Sunday afternoon, June 19, 1955.

Upon the first trial of the case the jury disagreed but upon the second trial another jury returned a verdict in favor of the plaintiff for $8,000.00 on October 4, 1956. Motions by the defendant for a directed verdict in his favor made at the conclusion of the evidence offered in behalf of the plaintiff and after the introduction of all the evidence and a motion to set aside the verdict and award the defendant a new trial were overruled and by

order entered December 14, 1956, the circuit court rendered judgment for the plaintiff for the amount of the verdict with interest and costs. To that judgment this Court granted this writ of error on May 13, 1957, upon the application of the defendant.

As the collision in which the plaintiff sustained the injuries of which she complains occurred in the Commonwealth of Virginia the right of the plaintiff to recover damages for such injuries must be determined by the laws of that State as applied by its courts. *Saena* v. *Zenith Optical Company,* 135 W. Va. 795, 65 S. E. 2d 205; *Dallas* v. *Whitney,* 118 W. Va. 106, 188 S. E. 766; *Schade* v. *Smith,* 117 W. Va. 703, 188 S. E. 114; *Wood* v. *Shrewsbury,* 117 W. Va. 569, 186 S. E. 294; *Clise* v. *Prunty,* 112 W. Va. 181, 163 S. E. 864; *Clise* v. *Prunty,* 108 W. Va. 635, 152 S. E. 201. In the *Saena* case, quoting from *Clise* v. *Prunty,* 108 W. Va. 635, 152 S. E. 201, this Court held that in an action instituted in this State to recover damages for personal injuries received in another State the right of recovery will be tested by the laws of that State.

Section 646.1, Article 5, Title 8, Code of Virginia, 1950, enacted in 1938, provides that "No person transported by the owner or operator of any motor vehicle as a guest without payment for such transportation and no personal representative of any such guest so transported shall be entitled to recover damages against such owner or operator for death or injuries to the person or property of such guest resulting from the operation of such motor vehicle, unless such death or injury was caused or resulted from the gross negligence or willful and wanton disregard of the safety of the person or property of the person being so transported on the part of such owner or operator."

The defendant assigns as errors requiring reversal of the judgment the action of the circuit court (1) in overruling the motion of the defendant for a directed verdict at the conclusion of the evidence in behalf of the plaintiff; (2) in overruling the motion of the defendant for a directed verdict at the conclusion of all the evidence; and

(3) in overruling the motion of the defendant to set aside the verdict of the jury and to grant him a new trial.

The controlling question presented by these assignments of error is whether the evidence sufficiently establishes gross negligence of the defendant as the proximate cause of the injuries sustained by the plaintiff.

On Sunday morning, June 19, 1955, the defendant, accompained by his wife, Mr. and Mrs. Harold B. Steele, and the plaintiff, left Huntington, where all of them resided, in a Packard sedan automobile owned and operated by the defendant for the purpose of attending a convention at Asheville, North Carolina, to which he and Steele were delegates. Steele occupied the right front seat, Mrs. Steele the left rear seat, Mrs. Young the right rear seat, of the automobile, and the plaintiff was seated between Mrs. Young and Mrs. Steele. They proceeded from Huntington east to Charleston; from Charleston to Princeton they traveled over the West Virginia Turnpike; and from Princeton to the scene of the wreck, which is approximately forty five miles southwest of Bluefield, they traveled over United States Route No. 19. At Claypool Hill, about five and one-half miles from the scene of the collision, they stopped a short time for lunch. While traveling on the Turnpike the speed of the automobile varied from thirty or forty to fifty, sixty or seventy miles per hour. After leaving the Turnpike the defendant drove the automobile at a speed of approximately fifty to sixty miles per hour. According to the testimony of Mrs. Steele, the speed of the automobile after it left the Turnpike caused comment by the plaintiff, Mrs. Young, and Mrs. Steele to the effect that the defendant should have driven faster than thirty to forty miles per hour on the Turnpike instead of driving at the higher speed on the curved sections of United States Route No. 19.

United States Route No. 19 between Claypool Hill and the scene of the wreck follows a winding course. Its improved portion is approximately eighteen feet in width and its surface is made of material known as blacktop

which is slippery when wet. The collision occurred on the section of the highway between two bridges which cross Indian Creek near a wide semicircular bend in that stream. The width of the highway on each bridge is nineteen feet. The length of the section of the highway between the two bridges, as indicated by two maps filed as exhibits, is approximately 350 feet. For a distance of approximately thirty five feet from the end of each bridge the highway between the bridges is straight but for the remainder of the distance of approximately two hundred and eighty feet it curves to the right in the direction in which the automobile driven by the defendant was traveling.

At the time of the wreck, which occurred about two o'clock in the afternoon, the automobile of the defendant was proceeding generally in a southwesterly direction and the truck with which it collided was traveling generally in a northeasterly direction on the highway. At a distance of approximately 1000 feet north of the first bridge which the defendant was approaching is a road sign to the right of the highway which bears the legend "Winding Road Maximum Safe Speed 35 Miles" and at a distance of approximately 300 feet north of the same bridge is a road sign to the right of the highway which bears the legend "Narrow Bridge". The defendant testified that he was unable to say whether he noticed these signs when approaching the first bridge.

When the defendant left Claypool Hill it was raining. The road was wet and slippery and this condition continued to the place where the wreck occurred. After crossing the first bridge, which he approached at a speed of from fifty to sixty miles per hour, the defendant drove the automobile through the curve to his left of the white double line marking the center of the curve at a speed of from forty to fifty miles per hour and skidded forward at a speed of from thirty to thirty five miles per hour into the front end of the approaching truck which was on its right side of the highway and the rear end of which

was at the northeast end of the second bridge at the time of the collision.

The plaintiff testified that after the automobile left Claypool Hill and between that place and the scene of the wreck she observed from the speedometer that it was traveling between seventy and seventy five miles per hour and that she then told Mrs. Young to request the defendant to reduce its speed. She also stated that the defendant could have heard her remarks about the speed. The plaintiff, however, did not indicate exactly where the automobile was traveling when she made the statement to Mrs. Young. Mrs. Steele testified that she heard the plaintiff tell Mrs. Young that the defendant was driving about seventy miles per hour and that she was frightened by that speed; that she also heard Mrs. Young repeat to the defendant the statement of the plaintiff; and that the defendant "turned around and looked, but that is as much as he did." The defendant and Mrs. Young denied that either of them heard the statements of the plaintiff and Steel testified that he did not hear any one discuss the speed at which the automobile was driven. The plaintiff also testified that the defendant, after crossing the first bridge and while rounding the curve about "half a block" from the second bridge, drove the automobile "over a long ways" on the wrong side of the road; that he "put on his brakes" and "did slow down"; that he "was going so fast he couldn't stop"; and that "he shot right straight forward into the truck and hit it almost head on."

Steele who was riding in the right front seat of the automobile and who was called as a witness by the plaintiff testified that when the automobile crossed the first bridge he and the defendant were engaged in conversation; that before the automobile came to the first bridge it was traveling from fifty to sixty miles per hour; that the highway was slippery; that as the defendant drove the automobile round the curve a part of the automobile was on the left side of the highway; that the defendant attempted to reduce the speed of the automobile, applied

the brakes, and the automobile skidded in his attempt to return it to the right side of the highway; that at that time the witness saw the oncoming truck; that the defendant applied the brakes again but did not succeed in returning the automobile to the right of the center line of the highway; and that the automobile skidded in a forward direction into the truck at a speed of thirty to thirty five miles per hour. He also testified that his only real criticism of the operation of the automobile by the defendant was that "in rounding turns he would get over a little bit past the center line". Mrs. Steele who was riding in the right rear seat of the automobile, and who also testified in behalf of the plaintiff, stated that the defendant and Steele talked continuously during the trip; that when conversing the defendant would turn his head to look at Steele and answer questions; that as the automobile rounded the curve it was "quite a ways over on" the left side of the highway; that she felt the defendant apply the brakes and that the automobile skidded; that it was raining and the road was slippery; and that the automobile went "head-on into the truck".

Robert Sykes, a witness produced by the plaintiff, testified that before the collision occurred he was standing between the edge of the highway and his automobile which was parked on the berm on the side of the highway between the two bridges; that he was about thirty five or forty feet from the place where the wreck occurred; that when he first saw the automobile driven by the defendant it was about 300 feet away and coming toward the second bridge; that as it rounded the curve its front wheels were crossing the white double center line of the highway; that it was two feet over the white line when it passed the witness; that it came "all the way over on the left side" and hit the truck as it was coming off the bridge; that when he first saw the automobile driven by the defendant it was traveling at the rate of forty or fifty miles per hour; that its speed at the time of the impact was about thirty five miles per hour; that at the time of the collision the highway was damp but that at that time it was not rain-

ing; that when the collision occurred both front wheels and the left rear wheel of the automobile of the defendant were to the left of the center line; that the impact knocked the truck about two feet backward; that when the collision occurred the cab of the truck had passed the end of the bridge and its front wheel was on the berm of the road on its right hand side; that the truck was moving at the time of the collision; and that as the defendant passed the witness the defendant turned his head toward the person riding to his right as if he were talking with him.

Sam Vanover, the driver of the truck, who was also produced as a witness for the plaintiff, testified that when he had reached a point about midway in the first bridge while proceeding north toward Claypool Hill he saw the oncoming automobile of the defendant on the highway at a distance of seventy five to a hundred feet in front of the truck; that at that time the automobile was two or three feet to its left of the center line of the highway; that it continued to move across the white double center line until it was completely to the left of that line; that when it hit the truck three of the wheels of the automobile were to the left of the center line and one wheel was resting on and inside the white line; that when the collision occurred the truck had just crossed the bridge and its right front wheel was on the berm on the right side of the highway; that the impact of the collision knocked his truck backward about a foot and a half; that when he saw the automobile of the defendant coming toward his truck its speed seemed to be "tolerably fast" but that he could not estimate its speed; that as the automobile came closer to the truck it appeared to the witness that the speed of the automobile became "faster"; that the front end of his truck was damaged; and that after the collision there was sufficient room on the highway to the right of the automobile to enable buses, trucks and trailer trucks to pass, and they did pass, the automobile and his truck before they were moved.

Mrs. Young, the wife of the defendant and a witness in his behalf, testified that until the collision occurred she did not notice anything unusual in the manner in which the

defendant operated the automobile; that the speed at which he drove the automobile was from thirty to thirty five miles per hour; that when he approached the second bridge he saw the truck crossing the bridge; that he could not pass the truck, applied the brakes to stop the automobile, and at that time both the automobile and the truck began to skid; that she saw the truck while the automobile was rounding the curve; that the automobile was on its right side of the road and the truck was on its right side of the road; and that each vehicle skidded into the other but that when they came together the automobile might have been "a little over the left side of the line."

The defendant testified that while traveling on the Turnpike he drove the automobile at the rate of fifty to sixty miles per hour; that between Claypool Hill and the scene of the accident its speed was from thirty to thirty five miles per hour; that as he approached the bridge he applied the brakes when he saw the truck; that the automobile continued almost straight ahead; that between Claypool Hill and the place where the collision occurred he drove his automobile on the right hand side of the center line of the road; that at the time of the collision the left front wheel of his automobile was eight or ten inches to the left of the center line but the other wheels of his automobile were to the right of that line; that when he first saw the truck approaching it had not reached the second bridge; that his automobile was three or four car lengths or a distance of approximately sixty feet from the bridge, the length of which was about thirty feet; that until the collision occurred his automobile was to its right of the center line and the truck was to its right of the center line of the highway; that the impact of the collision caused the left front wheel of the automobile of the defendant to cross the center line; that the truck had crossed the bridge and its two rear wheels were two feet from the end of the bridge when the collision occurred; that there was not sufficient space on the right side of the road for the automobile of the defendant to pass the truck at the end of the bridge; that he applied the brakes in an

effort to stop his automobile and that it "skidded straight ahead"; and that though other vehicles passed the automobile and the truck after the collision, it was necessary for them to drive on the berm in order to pass. He admitted, however, on cross-examination that the left front part of his automobile hit the left front part of the truck.

Other than the testimony that the plaintiff complained about the speed of the automobile after it left Claypool Hill, that there was discussion by the plaintiff and her rear seat companions concerning its speed on the Turnpike, and that the only criticism by Steele was that it was driven "past the center line" when rounding turns, there is no evidence that any of the occupants of the automobile noticed anything unusual about or objected to the manner in which the defendant operated the automobile before the collision occurred.

The evidence relating to the operation of his automobile by the defendant and the occurrence of the collision amply supports the verdict of the jury which necessarily found the defendant guilty of gross negligence which proximately caused the injuries sustained by the plaintiff. There is evidence that the defendant before and at the time of the collision drove his automobile at a dangerous rate of speed on a slippery winding road; that before he came to the area of the two bridges he had operated the automobile to his left of the center line of the highway; that when or shortly after he entered the curve between the two bridges he drove the automobile to the left of the white double center line and continued to do so after he had observed the oncoming truck at least ninety feet in front of him until he ran into the front end of the truck as it came off the bridge on its right side of the highway; that the defendant was engaged in conversation with the other occupant of the front seat and turned his head in that direction while rounding the curve at a speed of forty to fifty miles per hour immediately before the collision; and that he did not notice and consequently did not heed the warning signs which indicated the maximum safe rate of speed and the

presence of the first bridge, both of which signs he passed while driving at a speed of approximately fifty miles per hour. The foregoing acts and omissions of the defendant constitute substantial evidence of gross negligence of the defendant in colliding with the truck while operating his automobile on the wrong side of the highway.

Gross negligence, as defined by the Supreme Court of Appeals of Virginia in numerous cases, is that degree of negligence which shows an utter disregard of prudence amounting to complete neglect of the safety of another. *Hill Hardware Corporation* v. *Hesson,* 198 Va. 425, 94 S. E. 2d 256; *Newell* v. *Riggins,* 197 Va. 490, 90 S. E. 2d 150; *Dickerson* v. *Miller,* 196 Va. 659, 85 S. E. 2d 275; *Hershman* v. *Payne,* 196 Va. 241, 83 S. E. 2d 418; *Kennedy* v. *McElroy,* 195 Va. 1078, 81 S. E. 2d 436; *Alspaugh* v. *Diggs,* 195 Va. 1, 77 S. E. 2d 362; *Crabtree* v. *Dingus,* 194 Va. 615, 74 S. E. 2d 54; *Carr* v. *Patram,* 193 Va. 604, 70 S. E. 2d 308; *Sibley* v. *Slayton,* 193 Va. 470, 69 S. E. 2d 466; *Steele* v. *Crocker,* 191 Va. 873, 62 S. E. 2d 850; *Reel* v. *Spencer,* 187 Va. 530, 47 S. E. 2d 359; *Millard* v. *Cohen,* 187 Va. 44, 46 S. E. 2d 2; *Woodrum* v. *Holland,* 185 Va. 690, 40 S. E. 2d 169; *Town of Big Stone Gap* v. *Johnson,* 184 Va. 375, 35 S. E. 2d 71; *Chappell* v. *White,* 182 Va. 625, 29 S. E. 2d 858; *Wright* v. *Osborne,* 175 Va. 442, 9 S. E. 2d 452; *Bell* v. *Commonwealth,* 170 Va. 597, 195 S. E. 675. In *Reel* v. *Spencer,* 187 Va. 530, 47 S. E. 2d 359, the opinion contains these statements: "We have repeatedly pointed out that gross negligence means something more than lack of ordinary care. In cases like that now before us we have characterized it as, 'an utter disregard of prudence amounting to complete neglect of the safety' of the guest (*Wright* v. *Osborne,* 175 Va. 442, 445, 9 S. E. (2d) 452, 454), 'heedless and reckless disregard of the rights' of the guest (*Woodrum* v. *Holland,* 185 Va. 690, 694, 40 S. E. (2d) 169, 171), 'conduct which shows an utter disregard of prudence amounting to complete neglect of the safety of another' (*Millard* v. *Cohen,* 187 Va. 44, 50, 51, 46 S. E. (2d) 2, 5)."

In several cases the opinions state that gross negligence has been described as such heedless and reckless

disregard of the rights of another as should shock or be shocking to fair minded or reasonable men. *Dickerson v. Miller,* 196 Va. 659, 85 S. E. 2d 275; *Garst v. Obenchain,* 196 Va. 664, 85 S. E. 2d 207; *Kennedy v. McElroy,* 195 Va. 1078, 81 S. E. 2d 436; *Alspaugh v. Diggs,* 195 Va. 1, 77 S. E. 2d 362; *Crabtree v. Dingus,* 194 Va. 615, 74 S. E. 2d 54; *Carr v. Patram,* 193 Va. 604, 70 S. E. 2d 308; *Sibley v. Slayton,* 193 Va. 470, 69 S. E. 2d 466; *Carroll v. Miller,* 175 Va. 388, 9 S. E. 2d 322.

Basing his contention on statements in the opinions of the cases just cited relative to such heedless and reckless conduct as should shock or be shocking to fair minded or reasonable men, the defendant insists that inasmuch as there is no evidence that any of the occupants of the automobile was actually shocked by the manner in which the defendant operated it, the evidence does not support the finding of the jury of gross negligence upon the part of the defendant. There is no merit in this contention of the defendant. Despite the absence of evidence that the occupants of the automobile, except perhaps the plaintiff, were shocked by the acts and the omissions of the defendant in operating the automobile prior to and at the time of the collision, as shown by the evidence, those acts and omissions indicate such heedless and reckless disregard of the rights of other persons by the defendant as should shock or be shocking to fair minded and reasonable men. The statements of the plaintiff to the wife of the defendant to the effect that she was frightened by the speed of seventy to seventy five miles per hour at which she said the defendant drove the automobile indicate that she at least was shocked at that time and that such speed on a wet, slippery and winding highway should shock or be shocking to fair minded and reasonable men.

Consideration of many of the cited cases justifies the conclusion that gross negligence within the meaning of Section 646.1, Article 5, Title 8, Code of Virginia, 1950, is that degree of negligence which shows an utter disregard of prudence amounting to complete neglect of the safety of another.

Though, under the law of Virginia, the act of driving an automobile on the wrong side of a highway is not necessarily gross negligence, *Smith* v. *Turner,* 178 Va. 172, 16 S. E. 2d 370, 136 A. L. R. 1251, such conduct may, in certain circumstances, constitute gross negligence. *Smith* v. *Smith,* 199 Va. 55, 97 S. E. 2d 907; *Steele* v. *Crocker,* 191 Va. 873, 62 S. E. 2d 850; *Smith* v. *Turner,* 178 Va. 172, 16 S. E. 2d 370, 136 A. L. R. 1251; *Wright* v. *Osborne,* 175 Va. 442, 9 S. E. 2d 452; *Collins* v. *Robinson,* 160 Va. 520, 169 S. E. 609.

In *Smith* v. *Smith,* 199 Va. 55, 97 S. E. 2d 907, the plaintiff was injured while riding as a guest in an automobile driven by a Mrs. Anderson which struck an oncoming automobile and then collided with another oncoming automobile. In the collision Mrs. Anderson, who was driving her automobile on the wrong side of the highway at night, was killed. The action was against the executor of her estate. The plaintiff obtained a judgment for $14,000.00 upon a jury verdict in that amount. The Supreme Court of Appeals reversed the judgment because of error in instructions given by the trial court but in discussing the facts and the question of gross negligence used this language:

"In the present case the accident was due entirely to the act of Mrs. Anderson in driving on the wrong side of the road. The road was practically straight and practically level and her driving lane was 12 feet wide, marked by a plain white line in the middle of the road. The approaching Toler car and Dickinson car were visible for half a mile. The jury could fairly infer from the evidence that both the approaching cars were well on their side of the road close to the edge; both were being driven at reasonable speed; the rain had stopped; no other traffic was then on the road. The jury could conclude that crossing over the white line and striking the Toler car was no mere inadvertence of an alert driver. * * *.

"The collision with the Toler car did not necessarily throw the Anderson car out of control. From the photo-

graphs of the former and other evidence the jury could have concluded that it did not, but that after little more than grazing the Toler car the Anderson car went on in a straight line, without swerving, a distance of 240 feet and crashed practically head-on into the Dickinson car, the right wheels of which were then six inches off the edge of the hard surface.

"There is no explanation in the record of these acts of negligence. There is no suggestion of any mechanical defect. The only reasonable explanation, as the jury could determine, was that Mrs. Anderson was asleep or that she was completely and recklessly inattentive to her duties as driver and to the safety of her passengers. In either aspect it was proper to submit to the jury for decision the question of whether she was guilty of gross negligence."

In *Smith* v. *Turner*, 178 Va. 172, 16 S. E. 2d 370, 136 A. L. R. 1251, the court said that needlessly driving an automobile on the wrong side of a straight road, in broad daylight, in the face of an automobile rapidly approaching from the opposite direction and in plain view, was gross negligence.

In *Collins* v. *Robinson*, 160 Va. 520, 169 S. E. 609, the court held that driving an automobile on the wrong side of a highway at night, around a curve into the path of an oncoming automobile when the view is obstructed, constituted gross negligence as a matter of law.

In *Wright* v. *Osborne*, 175 Va. 442, 9 S. E. 2d 452, the court said: "The common experience of users of the highway is that it is extremely dangerous to guests as well as others for an operator to drive his car to the left of the center of the highway, around a curve, or over a grade when his vision for a reasonable distance ahead is obstructed. It is equally dangerous for an operator to drive his car to the left of the center of a much traveled highway without keeping a proper lookout ahead for oncoming traffic. Such acts tend to reveal an utter disregard of

the dictates of prudence. They display a reckless disregard of consequences."

When a combination of negligent acts occurs, the mere number of such acts does not of itself constitute gross negligence, *Garst* v. *Obenchain,* 196 Va. 664, 85 S. E. 2d 207; but, under the law of Virginia, when numerous negligent acts are so combined that reasonable men may differ as to whether their cumulative effect shows a form of recklessness or a total disregard of all precautions akin to willful and wanton misconduct, it is a question for the jury whether such negligence amounts to gross negligence. *Garst* v. *Obenchain,* 196 Va. 664, 85 S. E. 2d 207; *Kennedy* v. *McElroy,* 195 Va. 1078, 81 S. E. 2d 436; *Mitchell* v. *Wilkerson,* 193 Va. 121, 67 S. E. 2d 912; *Bell* v. *Commonwealth,* 170 Va. 597, 195 S. E. 675; *Wright* v. *Swain,* 168 Va. 315, 191 S. E. 611; *Drumwright* v. *Walker,* 167 Va. 307, 189 S. E. 310.

Ordinary negligence and gross negligence differ in degree of inattention and both differ in kind from willful and intentional conduct which is known, or ought to be known, to have a tendency to injure. *Garst* v. *Obenchain,* 196 Va. 664, 85 S. E. 2d 207; *Boward* v. *Leftwich,* 197 Va. 227, 89 S. E. 2d 32; *Kennedy* v. *McElroy,* 195 Va. 1078, 81 S. E. 2d 436; *Alspaugh* v. *Diggs,* 195 Va. 1, 77 S. E. 2d 362; *Chappell* v. *White,* 182 Va. 625, 29 S. E. 2d 858; *Thornhill* v. *Thornhill,* 172 Va. 553, 2 S. E. 2d 318. Under the law of Virginia, gross negligence is ordinarily a question of fact for the jury and only becomes a question of law for the court when reasonable men should not differ as to the proper conclusion to be drawn from the evidence. *Newell* v. *Riggins,* 197 Va. 490, 90 S. E. 2d 150; *Garst* v. *Obenchain,* 196 Va. 664, 85 S. E. 2d 207; *Kennedy* v. *McElroy,* 195 Va. 1078, 81 S. E. 2d 436; *Alspaugh* v. *Diggs,* 195 Va. 1, 77 S. E. 2d 362; *Carr* v. *Patram,* 193 Va. 604, 70 S. E. 2d 308; *Sibley* v. *Slayton,* 193 Va. 470, 69 S. E. 2d 466; *McDowell by Gravatt* v. *Dye,* 193 Va. 309, 69 S. E. 2d 459; *Steele* v. *Crocker,* 191 Va. 873, 62 S. E. 2d 850; *Via* v. *Badanes,* 189 Va. 44, 52 S. E. 2d 174; *Chappell* v. *White,* 182 Va. 625, 29 S. E. 2d 858; *Lipscomb* v. *O'Brien,* 181 Va. 471, 25 S. E. 2d 261; *Jones* v. *Pasco,*

179 Va. 7, 18 S. E. 2d 258; 138 A. L. R. 1385; *Thornhill* v. *Thornhill,* 172 Va. 553, 2 S. E. 2d 318; *Drumwright* v. *Walker,* 167 Va. 307, 189 S. E. 310. Many decisions of this Court, involving the questions of negligence and contributory negligence, are to the same effect. *Prettyman* v. *Hopkins Motor Company,* 139 W. Va. 711, 81 S. E. 2d 78; *Davis* v. *Sargent,* 138 W. Va. 861, 78 S. E. 2d 217; *Wilson* v. *Edwards,* 138 W. Va. 613, 77 S. E. 2d 164; *Thrasher* v. *Amere Gas Utilities Company,* 138 W. Va. 166, 75 S. E. 2d 376; *Daughtery* v. *Baltimore and Ohio Railroad Company,* 135 W. Va. 688, 64 S. E. 2d 231; *Isgan* v. *Jenkins,* 134 W. Va. 400, 59 S. E. 2d 689; *Davis* v. *Pugh,* 133 W. Va. 569, 57 S. E. 2d 9; *Gilkerson* v. *Baltimore and Ohio Railroad Company,* 129 W. Va. 649, 41 S. E. 2d 188; *Yuncke* v. *Welker,* 128 W. Va. 299, 36 S. E. 2d 410; *Taylor* v. *City of Huntington,* 126 W. Va. 732, 30 S. E. 2d 14; *Nichols* v. *Raleigh-Wyoming Mining Company,* 116 W. Va. 163, 179 S. E. 70; *Cavendish* v. *Chesapeake and Ohio Railway Company,* 95 W. Va. 490, 121 S. E. 198; *Chambers* v. *Princeton Power Company,* 93 W. Va. 598, 117 S. E. 480, 29 A. L. R. 1041; *Lindsey* v. *Bluefield Produce and Provision Company,* 91 W. Va. 118, 112 S. E. 310; *Walters* v. *Appalachian Electric Power Company,* 75 W. Va. 676, 84 S. E. 617; *Jaggie* v. *Davis Colliery Company,* 75 W. Va. 370, 84 S. E. 941; *Ewing* v. *Lanark Fuel Company,* 65 W. Va. 726, 65 S. E. 200, 29 L. R. A., N. S., 487; *Foley* v. *City of Huntington,* 51 W. Va. 396, 41 S. E. 113; *Raines* v. *Chesapeake and Ohio Railway Company,* 39 W. Va. 50, 19 S. E. 565, 24 L. R. A. 226; *Hanley* v. *City of Huntington,* 37 W. Va. 578, 16 S. E. 807.

As it is clear that reasonable men could draw different conclusions from the material facts established by the evidence bearing upon the issue of gross negligence upon the part of the defendant the action of the circuit court was proper in overruling the motions of the defendant for a directed verdict in his favor and in submitting the question of gross negligence to the jury.

This Court has repeatedly held that when an action for the recovery of damages for personal injuries, involving conflicting testimony and circumstances upon the questions

of negligence and contributory negligence, has been fairly tried, under proper instructions, the verdict of the jury will not be set aside unless plainly contrary to the weight of the evidence, or without sufficient evidence to support it. *Davis* v. *Sargent,* 138 W. Va. 861, 78 S. E. 2d 217; *Wilson* v. *Edwards,* 138 W. Va. 613, 77 S. E. 2d 164; *Thrasher* v. *Amere Gas Utilities Company,* 138 W. Va. 166, 75 S. E. 2d 376; *Yuncke* v. *Welker,* 128 W. Va. 299, 36 S. E. 2d 410; *Dangerfield* v. *Akers,* 127 W. Va. 409, 33 S. E. 2d 140; *Webb* v. *Brown and Williamson Tobacco Company,* 121 W. Va. 115, 2 S. E. 2d 898; *Ware* v. *Hays,* 119 W. Va. 585, 195 S. E. 265.

The evidence shows that the injuries sustained by the plaintiff in the collision were severe and painful and that some of them were permanent in character. The evidence further shows that as a result of her injuries she was deprived of a substantial amount of income because of her loss of employment. In view of these established facts the verdict of the jury is not excessive and it will not be disturbed on that ground.

The judgment of the circuit court is affirmed.

*Affirmed.*