**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

**No. 07-1144**

_____

HEATHER RUTECKI,

Plaintiff - Appellant,

v.

CSX HOTELS, INCORPORATED, d/b/a The Greenbrier Resort,

Defendant - Appellee.

_____

**No. 07-1711**

_____

HEATHER RUTECKI,

Plaintiff - Appellant,

v.

CSX HOTELS, INCORPORATED, d/b/a The Greenbrier Resort,

Defendant - Appellee.

_____

Appeals from the United States District Court for the Southern District of West Virginia, at Beckley. Thomas E. Johnston, District Judge. (5:05-cv-00226)

_____

Argued: May 14, 2008          Decided: August 19, 2008

_____

Before MOTZ, Circuit Judge, HAMILTON, Senior Circuit Judge, and Claude M. HILTON, Senior United States District Judge for the Eastern District of Virginia, sitting by designation.

───────────────

Affirmed by unpublished per curiam opinion.

───────────────

**ARGUED:** Roy D. Wasson, WASSON & ASSOCIATES, CHTD, Miami, Florida, for Appellant. James Wade Turner, HUDDLESTON & BOLEN, LLP, Huntington, West Virginia, for Appellee. **ON BRIEF:** W. Sam Holland, THE FERRARO LAW FIRM, Miami, Florida, for Appellant. Curtis R. A. Capehart, HUDDLESTON & BOLEN, LLP, Huntington, West Virginia, for Appellee.

───────────────

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Heather A. Rutecki brought suit against CSX Hotels, Inc., d/b/a The Greenbrier Resort (Greenbrier) for injuries she sustained during a guided horseback ride at the resort. Rutecki's complaint asserts three causes of action. First, Rutecki argues that Greenbrier violated the West Virginia Equestrian Responsibilities Act (the Act), W. Va. Code § 20-4-1 et seq. Next, Rutecki argues that Greenbrier committed gross negligence. Finally, Rutecki argues that Greenbrier committed ordinary negligence. The district court granted Greenbrier's motion for summary judgment on all three counts. We affirm.

## I.

Rutecki, an attorney from Florida, planned a visit to the Greenbrier with her mother for September 12, 2004. While making reservations for her stay, she inquired about horseback riding opportunities and scheduled a guided group ride. She was told by Greenbrier staff that all necessary equipment would be provided for her and that she did not have to bring her own newly-purchased equipment. Rutecki had been horseback riding on multiple occasions prior to her trip to the Greenbrier.

On September 13, Rutecki went to Kate's Mountain Outfitters, the Greenbrier's outdoor activities purveyor. There was no record of Plaintiff's group ride reservation, so she scheduled a one-on-

3

one guided trail ride. She was given a riding helmet and presented with a prepared statement regarding West Virginia's liability limitations, restrictions, and responsibilities relative to equestrian activities. Rutecki printed and signed her name on the prepared statement, but claims she did not read it as she was told that it was a "sign-in sheet." The prepared statement also contained a place for the guest to fill in his or her level of riding experience, which Rutecki did not do.

Karl Diem, a trail guide on the Greenbrier's equestrian staff, rode to the riding circle on a horse named "Thunder" leading a horse named "Trump" for Plaintiff to ride. Diem had never ridden Thunder before. Plaintiff mounted Trump and the ride began.

Diem and Rutecki successfully completed a portion of the ride without incident. After entering a riding trail through a wooded hillside, Diem's horse, Thunder, stopped on the trail and refused to advance. Diem attempted to get Thunder moving by talking, making a "kissing" noise, and using his heels. He then struck Thunder with a riding crop multiple times. After being struck with the crop, Thunder turned off the trail and attempted to go up the adjacent hillside. Diem lost his balance and jumped off Thunder holding the reins. During the Diem-Thunder melee, Rutecki's horse, Trump, spun around and ran back down the trail causing Plaintiff to be thrown off and to sustain severe physical injuries.

Rutecki filed suit on March 16, 2006. Prior to the end of discovery, but after Diem and Rutecki testified at deposition, Greenbrier filed a motion for summary judgment. While the motion was pending but not fully briefed, Rutecki's counsel withdrew and Rutecki filed multiple pro se responses in opposition to the motion. Rutecki successfully hired new counsel prior to the district court's final pretrial conference in December, 2006. At the final pretrial conference, the district court inquired as to whether Rutecki wished to conduct further discovery, and she replied that she wanted the case to proceed to trial as scheduled, but requested leave to make supplemental filings on Greenbrier's summary judgment motion. The district court permitted both parties to make supplemental filings and ultimately entered summary judgment in favor of Greenbrier.

II.

This Court reviews de novo the district court's entry of summary judgment. See Nat'l City Bank of Ind. v. Turnbaugh, 463 F.3d 325, 329 (4th Cir. 2006)("We review a grant of summary judgment de novo"). Summary judgment is appropriate where there is no genuine issue as to any material fact. See Fed. R. Civ. P. 56(c). Once a motion for summary judgment is properly made and supported, the opposing party has the burden of showing that a genuine dispute exists. See Matsushita Elec. Indus. Co. v. Zenith

5

<u>Radio Corp.</u>, 475 U.S. 574, 586-87 (1986).  A material fact in dispute appears when its existence or non-existence could lead a jury to different outcomes.  See <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).  A genuine issue exists when there is sufficient evidence on which a reasonable jury could return a verdict in favor of the non-moving party.  See <u>id.</u>  Mere speculation by the non-moving party "cannot create a genuine issue of material fact."  <u>Beale v. Hardy</u>, 769 F.2d 213, 214 (4th Cir. 1985); <u>see also</u> <u>Ash v. United Parcel Serv., Inc.</u>, 800 F.2d 409, 411-12 (4th Cir. 1986).  Summary judgment is appropriate when, after discovery, a party has failed to make a "showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986).  When a motion for summary judgment is made, the evidence presented must always be taken in the light most favorable to the non-moving party.  See <u>Smith v. Virginia Commonwealth Univ.</u>, 84 F.3d 672, 675 (4th Cir. 1996)(en banc).

A.

Rutecki first challenges the district court's decision to grant summary judgment on her claims under the West Virginia Equestrian Activities Responsibility Act.  The West Virginia Equestrian Activities Responsibility Act, W. Va. Code § 20-4-1 <u>et</u>

<u>seq.</u>, states as its purpose "to define those areas of responsibility and those affirmative acts for which the operators of equestrian businesses shall be liable . . . and to further define those risks which the participants expressly assume" because "there are inherent risks in equestrian activities . . . which are essentially impossible for the operators of equestrian businesses to eliminate." W. Va. Code § 20-4-1.

The Act provides four duties of horsemen relevant to this case, requiring every horseman to:

(1) Make reasonable and prudent efforts to determine the ability of a participant to safely engage in equestrian activity, to determine the ability of the horse to behave safely with the participant, and to determine the ability of the participant to safely manage, care for and control the particular horse involved;

(2) Make known to any participant any dangerous traits or characteristics or any physical impairments or conditions related to a particular horse which is involved in equestrian activity of which the horseman knows or through the exercise of due diligence could know; . . .

(4) In providing equipment or tack to a participant, make reasonable and prudent efforts to inspect such equipment or tack to assure that it is in proper working condition and safe for use in the equestrian activity;

(5) Prepare and present to each participant or prospective participant, for his or her inspection and signature, a statement which clearly and concisely explains the liability limitations, restrictions and responsibilities set forth in this article.

W. Va. Code § 20-4-3. In its liability section, the Act provides in relevant part that:

(a) A horseman shall be liable for injury, loss or damage caused by failure to follow the duties set forth in

7

section three of this article where the violation of duty is causally related to the injury, loss or damage suffered . . .

(b) A horseman shall be liable for acts or omissions which constitute gross negligence or willful and wanton conduct which is the proximate cause of injury to a participant . . . .

W. Va. Code § 20-4-5. With regard to duties of participants, the Act states that:

It is recognized that equestrian activities are hazardous to participants, regardless of all feasible safety measures which can be taken.

Each participant . . . expressly assumes the risk of and legal responsibility for any injury . . . which results from participation in an equestrian activity. Each participant shall have the sole individual responsibility for knowing the range of his or her own ability to manage, care for, and control a particular horse or perform a particular equestrian activity, and it shall be the duty of each participant to act within the limits of the participant's own ability, to maintain reasonable control of the particular horse . . . .

W. Va. Code § 20-4-4.

The district court found that there was a genuine issue of material fact with respect to Greenbrier's compliance with the first duty required of horsemen under the Act. The district held that a jury could find that Greenbrier failed to make a reasonable effort to determine Rutecki's riding ability generally and also with respect to her ability to ride Trump. However, in addition to finding that Greenbrier did not violate any of the other relevant duties under the Act, the district court found that there was no evidence in the record to establish that Greenbrier's actions were

8

"causally related" to Rutecki's injuries, as required for a horseman to be liable under the Act. We agree with the district court.

The Act's first duty required Greenbrier to make a reasonable effort to determine Rutecki's riding ability. Greenbrier presented Rutecki with a sheet containing liability limitation language and a space for Rutecki to fill in her level of horseback riding experience. While Rutecki signed the liability limitation form, she did not fill out the portion indicating her level of experience. Consequently, a jury could find that Greenbrier did not make a reasonable effort to determine Rutecki's riding ability, as Rutecki testified at deposition that Greenbrier made no follow-up inquiry to determine her ability. In addition, the Act's first duty requires horsemen to match the participant's ability with the particular horse she will ride. Since a jury could reasonably conclude that Greenbrier did not reasonably ascertain Rutecki's riding ability, a jury could also conclude that Greenbrier failed to determine Rutecki's ability to manage Trump.

The Act's second duty requires horsemen to make known to a participant any dangerous conditions of a particular horse. Rutecki provides no evidence that either Trump or Thunder possessed any dangerous characteristics at the time of her trail ride. Moreover, the record shows that Trump was successfully used as a trail horse for ten years and there is no indication that

9

Greenbrier had experienced any problems with Thunder prior to Rutecki's injury. Consequently, no jury could find that Greenbrier breached this duty.

The Act's third duty requires horsemen to inspect equipment provided to participants to insure that it is in proper working condition. Rutecki presents no evidence that the equipment she was provided with was defective in any way. However, she argues that Greenbrier's failure to provide her with additional equipment – specifically riding boots and pants – constitutes a violation of this duty. This argument fails because Rutecki presents no evidence that riding boots or pants were necessary for the ride she took or that Greenbrier's failure to provide such equipment was unreasonable.

The Act's fourth duty requires horsemen to present participants with a clear statement of the Act's liability limitation. A clear and concise statement of the Act's liability limitation was presented to and signed by Rutecki on the date of her ride, thus satisfying Greenbrier's obligation to comply with this duty. Rutecki argues, however, that because she was told to sign a "sign-in sheet" she did not realize she was being presented with a liability limitation statement. However, the document signed by Rutecki is titled "The Greenbrier Notice, Release, and Indemnification," and contains a paragraph explaining the various

10

duties of horsemen and riders. Greenbrier has clearly complied with this duty in this case.

While we conclude Greenbrier's compliance with the Act's first duty is a material fact in dispute, in order to survive summary judgment, Rutecki must also point to a disputed material fact concerning the causation required by the Act. For Greenbrier to be liable, its failure to ascertain Rutecki's riding ability and her ability to control Trump must be "causally related" to the injuries she sustained. W. Va. Code. § 20-4-5(a). In contrast, to be liable for gross negligence under the Act, Greenbrier's actions must have proximately caused the participant's injuries. Id. at § 20-4-5(b). Consequently, the "causally related" standard requires a degree of causation somewhat less than that required by the familiar proximate cause standard.

While the West Virginia legislature has not explicitly defined the "causally related" standard, a court in West Virginia has had occasion to interpret the standard in the context of another statute. See Hardin v. Ski Venture, 848 F. Supp. 58 (N.D. W. Va. 1994)(interpreting the West Virginia Ski Responsibility Act, W. Va. Code § 20-3A-1 et seq., which contains the same "causally related" standard). In Hardin, the court denied the defendant's motion for summary judgment holding that the plaintiff's expert witness had set forth sufficient evidence to create a material fact issue by "opin[ing], by deposition and an accompanying report, that the

11

accident resulted from the making of excessively wet snow which stuck to plaintiff's goggles and obscured his vision. In addition, plaintiff's expert believes that the placement of the snow-making machine . . . may have contributed to the accident." Id. at 59.

Here, Rutecki has not presented any evidence that could lead a jury to conclude that her injuries were causally related to Greenbrier's failure to assess her horseback riding ability. Indeed, had Greenbrier more thoroughly investigated Rutecki's ability, they would have found that she had been riding on multiple prior occasions. Without any evidence that Trump or Thunder could be ridden only by more experienced riders, there is no evidence that Greenbrier would have had Rutecki ride a different horse or a different route given her level of experience. Consequently, we agree with the district court that "[r]egardless of what [Greenbrier] may or may not have done, the intervening event of the inexplicable behavior of the two horses appears to be the cause of this accident."

Rutecki argues that the district court erred in granting summary judgment based on a lack of evidence of causation because Greenbrier did not move for summary judgment on causation grounds.[1] See John Deere Co. v. American Nat. Bank, 809 F.2d 1190 (5th Cir.

---

[1]Greenbrier's initial motion for summary judgment advances the theory that the Act precludes liability for injuries sustained in a fall from a horse. The district court rejected this argument and Greenbrier does not pursue it on appeal.

1987)(reversing summary judgment where, without adequate notice to the plaintiff, the district court granted defendant's motion on grounds not urged by defendant). However, "district courts are widely acknowledged to possess the power to enter summary judgments sua sponte, so long as the losing party was on notice that she had to come forward with all of her evidence." Hughes v. Bedsole, 48 F.3d 1376, 1379 (4th Cir. 1995)(quoting Celotex, 477 U.S. at 326).

The record indicates that Rutecki received notice that causation was a live issue on summary judgment. First, Greenbrier moved for summary judgment on Rutecki's entire complaint, and success on the merits of Rutecki's claim under the Act would require proof of causation. Second, in a supplemental opposition brief, Rutecki specifically argued that her injuries were caused by Greenbrier's actions and referenced evidence in the record in an attempt to highlight a material fact in dispute. Third, in its response to Rutecki's supplemental finding, Greenbrier explicitly argued that its actions had not caused Rutecki's injuries. Consequently, it is clear that Rutecki had notice that causation was an issue the district court would consider on defendant's motion for summary judgment.

B.

West Virginia law "recognizes a distinction between negligence, including gross negligence and wilful [sic], wanton,

13

and reckless misconduct." Mandolidis v. Elkins Indus., 246 S.E.2d 907, 913 (W. Va. 1970). While the West Virginia Supreme Court of Appeals has never provided its own definition of gross negligence, it has interpreted Virginia law to define gross negligence as the "degree of negligence which shows an utter disregard of prudence amounting to complete neglect of the safety of another." Dodrill v. Young, 102 S.E.2d 724, 730 (W. Va. 1958). Virginia courts have further defined gross negligence as "an utter disregard of prudence, amounting to complete neglect of the safety of another, such as to be shocking to reasonable men," Finney v. Finney, 125 S.E.2d 191, 193 (Va. 1962), and the "absence of slight diligence, or the want of even scant care." Colby v. Boyden, 400 S.E.2d 184, 189 (Va. 1991)(internal quotation omitted).

We agree with the district court that Rutecki has produced "no affidavits, no deposition testimony, and no expert opinion that Mr. Diem's conduct even strayed from what was reasonable under the circumstances, let alone to such a degree as to show an utter disregard for prudence." The only evidence Rutecki points to is her own deposition testimony describing Diem's struggle with Thunder prior to her injury. No reasonable juror could conclude from this testimony that Diem's conduct was without prudence to the point of being shocking. Moreover there is no evidence in the record to suggest that Greenbrier's actions were the direct or proximate cause of Rutecki's injuries.

14

C.

We agree with the district court that the West Virginia Equestrian Activities Responsibility Act displaces actions for ordinary negligence. The Act states that "there are inherent risks in equestrian activities . . . which are essentially impossible for the operators of equestrian businesses to eliminate." W. Va. Code § 20-4-1. To permit an action for ordinary negligence against a horseman operating under the Act would contravene its purpose.

III.

For the foregoing reasons, the judgment of the district court is affirmed.[2]

AFFIRMED

---

[2]In No. 07-1711, the Court affirms the district court's award of costs.