June 8, 1953.

Record No. 4064.

Present, Spratley, Buchanan, Miller, Smith and Whittle, JJ.

The opinion states the case.

*Fred B. Gentry, Frank L. McKinney,* for plaintiff in error.

*Easley, Edmunds & Vaughan, Tuck, Bagwell & Dillard,* for defendant in error.

Mɪʟʟᴇʀ, J., delivered the opinion of the court.

Inez Green, plaintiff in the lower court, was seriously injured shortly after midnight of August 28, 1951, when an automobile in which she was riding as a guest veered from the highway,

traveled some distance and struck a culvert. She obtained a verdict and judgment against the driver, Ina D. Lloyd, for the injuries sustained, and we granted defendant a writ of error.

The dominant question is whether or not the evidence, when viewed most favorably to plaintiff, establishes gross negligence.

U. S. Route 501 in Halifax county extends generally in a northerly and southerly direction. Where the mishap occurred the highway is dual-laned; that is, the driveways used respectively by north and south bound vehicles are separated by a grass-topped island about 12 to 15 feet wide. The lane for south bound traffic has a 20 foot width and is divided by a broken white line down the center. The lane for north bound traffic is likewise 20 feet wide and similarly marked.

In the vicinity of the accident at intervals of 425 to 450 feet, there are vehicular cross-overs that permit traffic to cross the island from one 20-foot lane to the other.

Generally speaking, the edges of this island are almost flush with the hard-surfaced highway, though at places they are an inch or two lower. The surface of the island slopes from each side towards the middle so that its center line is several inches lower than its edges. At the point where the mishap occurred a cement-bottomed drain ditch about 15 inches deep runs along the middle of the island. It extends a distance of about 60 feet until it terminates at a culvert which borders the north edge of a cross-over connecting the two lanes of the highway. It was against this culvert that the vehicle collided.

Some hours before the mishap, it had rained and the highway was wet. The night was cloudy and dark, and just beyond the Town of Halifax where the accident happened, there were no street lights.

Plaintiff, defendant, Doris Thomas, and Lelia Barksdale, all of whom occupied the car, were employees of a mill in Halifax, Virginia. After ceasing work about midnight, these four ladies undertook to travel southwardly along Route 501 to their homes in South Boston.

Defendant was operating a sedan which was in good condition, and she drove along the highway at a reasonable speed, variously estimated by the four occupants to have been from 30 to 35 miles per hour. Plaintiff was seated on the driver's right, and the other two ladies occupied the rear seat. As the car approached the scene of the mishap, another car driven by

Willie F. Conner and also occupied by Leonard Holt, was observed ahead. Defendant pulled her automobile to the left and at a moderate speed approached and undertook to pass the Conner car. While her car was in the passing lane and near the rear of Conner's vehicle, a maroon Ford automobile, driven by Charlie Stover Jones, who was accompanied by several passengers, approached more rapidly from the rear. Jones suddenly and without warning undertook, at a speed of from 40 to 50 miles per hour, to pass both cars ahead of him by going through the narrow space between them. When he did so he struck the right front part of defendant's car and missed the left side of Conner's automobile by about 18 inches. As the Jones car passed, defendant's car veered to the left onto the island and traveled to its center, and thence to and astraddle the cement ditch until it collided with the abutment.

There is no claim that defendant had been guilty of any negligence up to the time that Jones recklessly undertook to pass her vehicle. The basis of plaintiff's case and the gravamen of her charge is that defendant was guilty of gross negligence in the manner in which she thereafter handled her car. Or, more specifically stated, plaintiff asserts that defendant's failure to control her car and bring it to a stop before striking the culvert was so inexcusable, inattentive and flagrantly careless as to amount to gross negligence.

To determine this issue, certain testimony must be set out in more detail.

Defendant, who was called as an adverse witness, stated that the accident was caused by the following circumstances and happened thus:

She said that she was traveling not over 35 miles per hour, and as she attempted to pass the Conner car, Jones suddenly and without warning passed on her right at 40 to 50 miles per hour. He went between her automobile and the car that she was attempting to pass and in so doing struck her right front fender. She further stated that at that moment plaintiff screamed and jumped or lurched over against her, and the combination of events knocked or caused her to slip or fall under the steering wheel and thus lose control of the car which swerved from the highway to the grass plot, traveled about 75 to 100 feet and struck the culvert. She explained that in the emergency she was unable to apply the brakes, steer the car or effectively do

anything in the short time before her car collided with the abutment. Her description of her position and inability to control the car is stated thus:

"A. I said my knees, when I was thrown under the wheel, slipped up against the dashboard, like that, and my feet back under me, and I couldn't get to the brake, and I was down under the wheel just enough so I couldn't see out the windshield or either side, and both knees struck the dashboard and the key or something cut a hole in my knee."

\* \* \* \* \* \*

"A. All I remember is when he struck me I left the hard surface and I was thrown under the wheel, and all of them was jumping up and down and screaming just as loud as they could."

Plaintiff and the other two occupants of the car testified that defendant's car was traveling about 30 miles per hour when they saw the Jones automobile pass on their right, but that they did not see or feel any contact between the two vehicles. They recalled that their car left the road at about that moment and traveled a good distance before striking the culvert. They were unable to estimate in feet the distance it traveled though they said it did not slacken its speed before the collision. One said the car was doing some bouncing or jumping about as it went up the grass plot "but there wasn't no real hard bumps." Plaintiff denied that she got out of her seat, or jumped or fell against defendant, and all three of them said that none of them moved, created any confusion or said anything from the time that the Jones car passed until defendant's car hit the culvert.

The combined testimony of Willie F. Conner and Leonard D. Holt was that they became aware of the presence of defendant's car in the left lane as it undertook to move up and pass them, and a little later Conner heard a "crush," and just after hearing that noise, the Jones car came by on their left. He estimated the distance between his vehicle and the Jones car, as the latter passed, to be about 18 inches, and he thought the "crush" noise that he heard was when defendant's car hit the culvert. Holt said he heard a sound like two cars might have struck or just brushed each other, and the next thing defendant's car hit the culvert and the Jones car passed on his left.

Charlie Stover Jones testified that he passed defendant's car at or near the cross-over north of the one where it struck the

culvert, and though he was not aware of striking defendant's vehicle, he did sense that something was wrong and stopped his car before it had traveled very far, and came back to the scene. He estimated the distance that defendant's vehicle traveled after it left the highway to be 425 to 450 feet.

Summarized, the pertinent testimony of the other occupants of the Jones car is that they remembered passing defendant's car on its right and the Conner car on its left, but they were not aware of having struck defendant's vehicle; though one of them on being questioned how close their car came to it, said, "Well, when he passed, it was close. I imagine she could have got excited or something."

Myrtle Ratliff and Irving Weschler visited plaintiff while she was in the hospital, and Myrtle Ratliff said that plaintiff told her that Charlie Stover Jones was to blame, for he passed their car at a high rate of speed and hit it. Weschler said that plaintiff told him that just as defendant was about to pass a car in front of her, a car came up from behind and ran between the two cars and "forced defendant off the highway."

State Trooper G. R. K. Foster, who came to the scene of the accident shortly after the mishap, examined the road and the tracks of defendant's car. By the use of a flashlight and the lights of his car, he carefully traced the tire marks made by defendant's automobile from the point where it left the highway, and stepped off these tracks to where the car rested against the culvert. He definitely fixed that distance at 96 feet.

Two witnesses other than Jones, one of whom saw the car leave the highway, testified to the course of the tire marks from where they entered the grass plot to the depression and drain ditch in the center of the island and thence to the disabled vehicle. They gave varying distances that indicate that the vehicle traveled anywhere from 210 to about 350 feet after it entered the grass island. These witnesses, including Jones, did not, however, step off or measure any distances as did the State trooper, but merely estimated the number of feet that they thought the car traveled after it swerved from the highway.

A few hours after the accident the officer minutely examined the two automobiles involved. He found a slight indentation in a silver chrome strip on the right front fender of defendant's vehicle, on which strip there was a discernible line about 3 or 4 inches long of maroon colored paint that matched the color of

the paint of the Jones car. The Jones car had a scratch on the left rear fender about 12 to 18 inches long, and in that scratch were some flecks of chrome. When this trooper at a later hour interviewed plaintiff, she stated that the Jones car had struck their vehicle.

▮ The physical evidence points with convincing certainty to the fact that when the maroon car was recklessly driven through the narrow space between defendant's automobile and Conner's vehicle, it struck or brushed defendant's right front fender. That the contact was not severe is of no material consequence. Jones' act was unlawful, startling and grossly negligent. Defendant was thus unexpectedly confronted with grave danger, and the emergency was due to no fault on her part. No doubt she instinctively pulled her car to the left, or it was turned by the blow, and thus entered upon a rougher and more uncertain area. Whether her hands slipped from the wheel when her car swerved from the road, or whether they were jarred therefrom by the other vehicle, or by plaintiff falling against her, if that happened, or by a combination of these circumstances, is of no real moment. For there is no doubt that the emergency caused her to lose her balance, both physically and emotionally, and thus release the wheel and lose control of the vehicle.

Was she guilty of gross negligence in failing to regain, in the short time available, some degree of composure and control of her car, and avoid the ultimate mishap? This is primarily dependent upon the speed of the car, the distance that it traveled, and the physical and emotional effect that the emergency and danger had upon her.

It may be as all of her guests say, that none of them spoke, made exclamation, or moved during the emergency and the short interval between the time that the Jones car passed and defendant's car struck the abutment. We accord to their testimony in this respect the full faith to which it is entitled though it does severely test our credulity. Yet, if it be true that no word was spoken, no exclamation voiced, and no movement made by any of the three guests in the car until the collision with the culvert, we are compelled to conclude that this silence and inaction were due to the fact that the ladies were so startled and frightened as to be rendered momentarily speechless and immobile, and

their silence and inaction were not indicative of mere indifference to what had happened and, what was transpiring.

That defendant was, in the first instance, confronted with grave danger due to no fault of hers is not open to discussion. The origin of the ultimate mishap was Jones' reckless act, and that no one can gainsay. Defendant was jarred, startled and frightened, and by reason of these circumstances and not of her own volition, she slipped or was thrown under the wheel. Whether her car traveled the maximum distance of 450 feet as fixed by one witness, or a lesser distance testified to by others, the result is the same. Her release of the wheel and inability to regain control of the car were not of her doing. That she may have become unduly excited and unnerved by the emergency, and thus failed to act promptly and intelligently under the difficulties presented, or failed to regain control of the wheel and skilfully operate her car so as to avoid injury to her guests in the few seconds available, may or may not amount to ordinary negligence, but it falls short of culpable conduct and gross negligence.

"A mere failure to skilfully operate an automobile under all conditions, or to be alert and observant, and to act intelligently and operate an automobile at a low rate of speed may, or may not, be a failure to do what an ordinarily prudent person would have done under the circumstances, and thus amount to lack of ordinary care; but such lack of attention and diligence, or mere inadvertence, does not amount to wanton or reckless conduct, or constitute culpable negligence for which defendant would be responsible to an invited guest." *Young* v. *Dyer,* 161 Va. 434, 440, 170 S. E. 737.

The usual indicia of gross negligence such as purposeful recklessness, deliberate inattention to known dangers, conscious and intended violation or rash disregard of traffic laws, or like purposeful misconduct, are wholly lacking on the part of defendant in the circumstances attending this accident.

In *Carr* v. *Patram,* 193 Va. 604, 70 S. E. (2d) 308, the accident happened in daylight, and briefly stated, the controlling facts were that while driving at about 50 miles an hour, defendant's attention was called to a bump or "knocking" in or under the car to which, however, she paid no attention. Then, or shortly thereafter, the right rear tire "blew out", and defendant was thus caused to lose control of her car. It swerved and

zigzagged three or four times from one side of the road to the other, and defendant in her excitement pressed her foot on the accelerator instead of the brake. The speed was thus increased, and after the car traveled 300 to 400 feet on the highway from the place that it first began to swerve, it plunged down an embankment, turned over twice and came to rest 71 feet from the place where it left the highway, thus having traveled out of control some 371 to 471 feet. We there said:

"It is, however, asserted that when defendant's attention was called to the "bump", she should have slowed down or stopped, and that her failure to do so was negligence. Reliance is also had upon the fact that when the car shortly or momentarily thereafter began to swerve and zigzag on the road, defendant pressed her foot on the accelerator instead of the brake, and thus increased the speed. It is then insisted and argued that these facts and circumstances,—*i.e.*, failure to heed the warning and slow down, and application of gas instead of brakes, with resultant excessive speed,—are sufficient to establish gross negligence. But these assertions and arguments fail to take into account the certain fact that defendant's loss of control was caused by the blowout and not by the manner in which she operated her car. If it be conceded that it would have been better to have attempted immediately to slow down the car upon hearing or being apprised of the bump or rattle heard by the occupants, whatever its cause, the failure to do so falls short of amounting to gross negligence. Thereafter, any omission on the part of defendant or failure to control the car was really caused by the flat tire. The excitement and physical difficulties occasioned thereby, and the resultant loss of control of the car were due to that mishap and not to lack of prudence of the driver, if any there was." *Carr v. Patram, supra,* at 609.

Here, as there, the original loss of control was occasioned by something other than the manner in which defendant operated the car; in one instance by a blowout and in the other by what happened when contact was made by another vehicle. In each case the original loss of control, and the later failure of the driver to regain control of the vehicle, were really caused by the original mishap and the difficulties thereafter encountered instead of by culpable conduct or inexcusable recklessness on the part of either driver.

The evidence conclusively shows that this verdict and the judgment entered thereon record a finding which constitutes a plain deviation from right and justice, and they should and must be held for naught. Section 8-491, Code 1950; *Meade* v. *Saunders,* 151 Va. 636, 144 S. E. 711; *McQuown* v. *Phaup,* 172 Va. 419, 2 S. E. (2d) 330.

The verdict and judgment will be set aside and reversed, and final judgment entered for defendant.

*Reversed and final judgment.*