## Richmond

T. Benton Smith, Executor, Etc. v. Edith W. Smith.

April 26, 1957.

Record No. 4666.

Present, Hudgins, C. J., and Eggleston, Buchanan, Miller, Whittle and Snead, JJ.

The opinion states the case.

*Fred B. Gentry*, for the plaintiff in error.

*W. Barney Arthur* (*E. Bruce Harvey; Arthur & Harvey*, on brief), for the defendant in error.

BUCHANAN, J., delivered the opinion of the court.

[■] This is an action for damages brought by Edith W. Smith, as plaintiff, against the executor of the estate of Alpha S. Anderson, deceased, defendant, for personal injuries sustained by the plaintiff who was a guest passenger in an automobile driven by Mrs. Anderson which was in collision with an automobile driven by Ruth Lynn Dickinson. Mrs. Anderson was killed in the collision. There was a jury verdict for $14,000 in favor of plaintiff on which the court entered judgment and the defendant appeals. The main issues are whether Mrs. Anderson was guilty of gross negligence, Code § 8-646.1, and whether the jury were properly instructed.

The accident happened about 10:45 p.m., August 7, 1955, on U. S. Highway 29 a few miles north of the town of Gretna, in Pittsylvania county. The road was hard-surfaced, 24 feet wide and divided by a white line into a northbound and a southbound lane of equal width. It was practically straight for a quarter of a mile each way from the place of accident. The collision was near the apex of a 30-minute curve which began about 260 feet north and ended about the same distance south of where the accident happened, too slight to affect visibility or speed. There was a slight downgrade of 1.4% going south as Mrs. Anderson was driving. It had been raining and the road was wet but the rain had stopped before the accident occurred.

In the car on the front seat beside Mrs. Anderson was Ryland Smith, who was her brother and the husband of plaintiff; and in the back seat were the plaintiff and Theo Smith, who was Mrs. Anderson's sister. They had been visiting a relative in Alexandria and had left there about 5:30 p.m. Ryland Smith had driven from Alexandria to Amherst, and Mrs. Anderson drove from Amherst to the place of accident, a distance of some 45 miles.

All the evidence in the case was from plaintiff's witnesses and it is without conflict. The three surviving occupants of the Anderson car gave no explanation of how the accident happened. Ryland Smith was in a hospital and did not testify. Miss Theo Smith said she was resting her head on the back of the seat with her eyes closed, knew nothing about the accident and did not hear the crash. The plaintiff testified that after they left Amherst she was dozing intermittently and the only thing she remembered was seeing her brother Ryland in the front seat with his head back resting and she heard Theo say, "Alpha, look out," and almost immediately came the crash.

She said Mrs. Anderson was driving all right during the time she observed her and there was no occasion to remonstrate or caution her in any way.

Just ahead of the car driven by Miss Dickinson, with which the Anderson car had the main collision, was a car driven by Curtis Toler going north and meeting the Anderson car. Toler testified that he was driving about 40 miles an hour and as the Anderson car approached it did not look like it was running at any excessive or unusual speed, but "it came over right on before crossing the line right at me." He said to the person beside him, "Where he going?" and by that time the Anderson car struck his back left fender. He said he was then altogether on his side of the road, not far from the center but he did not know how far. The blow damaged the left corner of his rear bumper and bent the left rear fender back toward the body. His car went off the road to his right and he pulled on up about 250 feet and stopped. He did not see the collision with the Dickinson car behind him. His companion, whose husband was on the back seat asleep and did not know anything about the accident, also testified that the Toler car was on its right-hand side of the road; that when Toler spoke she looked up and "this car were right on us then," and when she knew anything the Toler car was "just rocking."

Miss Dickinson was driving north back of the Toler car, which she had not seen. She did not know how fast she was driving but she normally drove around 50 miles an hour. She saw both cars about the same time. It appeared to her she said that the Anderson car was going to hit the Toler car but somehow it got by and "I didn't know it hit it. I mean, she got back on her side; I don't know if she got all the way back but she got around it in such a way that I didn't know she hit the car and then she came diagonally across the road—just straight across the road—and crashed into me." She continued thus:

"Q. Do I understand from that, that she came straight to you?

"A. It was straight.

"Q. Was her car swerving, or anything?

"A. Not to my knowledge, it wasn't.

"Q. And from what you saw it appeared to you that the car came straight to you from the Toler car?

"A. Yes, and I didn't know that it had hit the car. I mean, it got around it in such a way that I didn't know.

"Q. You saw the car coming in a straight line to you?

"A. Yes, sir."

She said she was sure she was on her side of the road but she did not know exactly where.

A State policeman came to the scene a few minutes after the accident. He testified that the Anderson and Dickinson cars were both damaged about the same way, with the complete front ends mashed back over the motors. He took some photographs at the scene, which were introduced, and also made some measurements with a tapeline. When he arrived the Anderson and Dickinson cars were as they had come to rest. The Anderson car was in the east lane against the front of the Dickinson car, which was at about right angles to the road with its rear wheels on the east shoulder and its front wheels about two feet on the hard surface. The Toler car was about 500 feet north of the Anderson and Dickinson cars. Two hundred fifty feet north of the two cars there were mud and debris in the road approximately four feet from the eastern edge of the road and at that point were tracks indicating that the right wheels of the Toler car had run off the hard surface and onto the shoulder. Eighteen feet north of the Anderson and Dickinson cars were glass and debris in the road lying also from four to five feet from the eastern edge of the highway. There was a tire mark on the east shoulder of the road about six inches from the hard surface for a distance of 25 feet south of the glass and debris. A few feet north of where the two cars came to rest there were two gouged out places in the road, having the appearance of being freshly made, each about 19 inches long, one of which was in the northbound lane 4 feet 6 inches to the east of the white line, and the other was in the southbound lane beginning about 1 inch west of the white line and ending about 8 inches from that line. No skidmarks were visible and all signs of wreckage were in the northbound lane.

There was some other evidence for the plaintiff to the effect that in Alexandria on the day of the accident Mrs. Anderson was very busy and active and when she tried to rest and sleep in the afternoon she was unable to do so.

The defendant by motions duly made contended below and here insists that the evidence for the plaintiff failed as a matter of law to establish that the accident was due to gross negligence on the part of Mrs. Anderson. The jury has found to the contrary, its conclusion has been approved by the trial court and the plaintiff is entitled

to have the evidence reviewed "with all reasonable inferences deducible therefrom resolved in her favor." *Humphreys* v. *Baird*, 197 Va. 667, 672, 90 S. E. 2d 796, 800.

At the instance of the defendant the court instructed the jury that gross negligence means something more than lack of ordinary care and must be of such character as to show an utter disregard of prudence amounting to a complete neglect of the safety of the guest, and showing a heedless and reckless disregard of his rights. *Cf. Kennedy* v. *McElroy*, 195 Va. 1078, 1081, 81 S. E. 2d 436, 439.

In *Garst* v. *Obenchain*, 196 Va. 664, 668, 85 S. E. 2d 207, 210, we repeated what we have said in many other cases, that gross negligence, "like all other kinds of negligence, is ordinarily a question of fact for the jury and only becomes a question of law for the court when, under the applicable rules of negligence, reasonable men should not differ as to the proper conclusion to be drawn from the evidence."

The task of determining whether the facts and the reasonable inferences therefrom in a given case do or do not show gross negligence as a matter of law, or present an issue of fact to be decided by the jury under proper instructions, is frequently a difficult one. *Alspaugh* v. *Diggs*, 195 Va. 1, 77 S. E. 2d 362, cites most of the recent decisions that have fallen on one side of the line or the other.

In *McDowell* v. *Dye*, 193 Va. 390, 398, 69 S. E. 2d 459, 465, we pointed out that deliberate inattention to the operation of an automobile constitutes important evidence of gross negligence, whereas only a momentary turning away of the eyes would not. Whether the conduct of a driver amounts to gross negligence depends on the facts and circumstances surrounding the operation. *Solterer* v. *Kiss*, 193 Va. 695, 70 S. E. 2d 329 (holding it to be a jury question whether the failure of the driver to look properly before driving into an intersection was gross negligence).

In *Smith* v. *Turner*, 178 Va. 172, 16 S. E. 2d 370, each driver had an unobstructed view in the daytime of the other car for a distance of several hundred yards on a straight and fairly level road 18 feet wide. There was a collision of such nature as to indicate that one or both were on the wrong side of the road. It was pointed out that in *Collins* v. *Robinson*, 160 Va. 520, 169 S. E. 609, it had been held that driving on the wrong side of the road at night around a curve into the path of an on-coming car where the view was obstructed was gross negligence as a matter of law and "*A fortiori*, needlessly driving

on the wrong side of a straight road, in broad daylight, in the face of a car rapidly approaching from the opposite direction and in plain view, is likewise gross negligence." 178 Va. at 178, 16 S. E. 2d at 372.

In *Newell* v. *Riggins*, 197 Va. 490, 90 S. E. 2d 150, it was held that going to sleep while driving was negligence, but whether it was gross negligence in view of the defendant's failure to explain why he dozed or went to sleep, was a jury question.

In *Sibley* v. *Slayton*, 193 Va. 470, 69 S. E. 2d 466; *Carr* v. *Patram*, 193 Va. 604, 70 S. E. 2d 308; and *Lloyd* v. *Green*, 194 Va. 948, 76 S. E. 2d 190, it was held that as a matter of law the defendants were not guilty of gross negligence; but in each of those cases the original causative factor of the accident was not chargeable to the negligence of the defendants. This is pointed out in the last-named case where it was said that, as in *Carr* v. *Patram*, "the original loss of control was occasioned by something other than the manner in which defendant operated the car; in one instance by a blowout and in the other by what happened when contact was made by another vehicle," which was being recklessly operated. 194 Va. at 955, 76 S. E. 2d at 195.

In the present case the accident was due entirely to the act of Mrs. Anderson in driving on the wrong side of the road. The road was practically straight and practically level and her driving lane was 12 feet wide, marked by a plain white line in the middle of the road. The approaching Toler car and Dickinson car were visible for half a mile. The jury could fairly infer from the evidence that both the approaching cars were well on their side of the road close to the edge; both were being driven at reasonable speed; the rain had stopped; no other traffic was then on the road. The jury could conclude that crossing over the white line and striking the Toler car was no mere inadvertence of an alert driver. Toler saw the car coming on his side far enough ahead to exclaim, "Where he going?" One of the passengers in the Anderson car called out to the driver, "Alpha, look out."

The collision with the Toler car did not necessarily throw the Anderson car out of control. From the photographs of the former and other evidence the jury could have concluded that it did not, but that after little more than grazing the Toler car, the Anderson car went on in a straight line, without swerving, a distance of 240 feet and crashed practically head-on into the Dickinson car, the right wheels of which were then six inches off the edge of the hard surface.

There is no explanation in the record of these acts of negligence.

There is no suggestion of any mechanical defect. The only reasonable explanation, as the jury could determine, was that Mrs. Anderson was asleep or that she was completely and recklessly inattentive to her duties as driver and to the safety of her passengers. In either aspect it was proper to submit to the jury for decision the question of whether she was guilty of gross negligence.

Since the dividing line between simple negligence for which the guest cannot recover and gross negligence for which he may is to be tightly drawn and carefully observed, it is important that the jury which decides the question should be plainly instructed as to the difference. The jury in this case was given, among others, three separate instructions, each stating substantially the following three separate propositions:

(1) It is an act of negligence to operate an automobile to the left of the center of the highway in such manner as to collide with an approaching car, and if Mrs. Anderson operated her car on the left of the center line of the highway, under the circumstances and conditions then prevailing, and if in so doing she was guilty of gross negligence, as defined, which caused or contributed to the accident, then the jury should find for the plaintiff; (2) it is an act of negligence to operate an automobile in such a manner as to endanger or be likely to endanger the life or limb of another, and if Mrs. Anderson operated her car in such manner as to endanger the life or limb of the plaintiff, and if in so doing she was guilty of gross negligence, as defined, which caused or contributed to the accident, then the jury should find for the plaintiff; (3) it is an act of negligence to operate an automobile without keeping it under proper control, and if Mrs. Anderson operated her car without keeping it under proper control, and if in so doing she was guilty of gross negligence, as defined, which caused or contributed to the accident, then the jury should find for the plaintiff.

These instructions were duly objected to by the defendant and we think it was prejudicial to the defendant to instruct the jury in that fashion. The essential act of negligence here was driving the automobile on the left side of the road into the path of the oncoming cars. Endangering life or limb in this instance was a result of that act, not a separate and independent act of negligence. Likewise not keeping the car under proper control was in this instance an element of the principal act of driving on the wrong side. These were all component parts of the negligent act that caused the accident and

not separate acts of negligence, the cumulative effect of which may constitute gross negligence as was explained in *Mitchell* v. *Wilkerson*, 193 Va. 121, 67 S. E. 2d 912; *Kennedy* v. *McElroy*, *supra*, 195 Va. 1078, 81 S. E. 2d 436; and *Garst* v. *Obenchain*, *supra*, 196 Va. 664, 85 S. E. 2d 207.

In the last-named case we said it is not the mere number of violated duties which constitutes gross negligence but their cumulative effect under the circumstances, amounting to recklessness or total disregard of all precautions, and "when the jury are instructed that they may infer gross negligence from certain enumerated negligent acts, the duties stated to have been violated must in fact be duties and not a restatement of the same duty." 196 Va. at 671, 85 S. E. 2d at 211.

These instructions which singled out elements of the causative act and based a finding instruction on each, unduly and incorrectly emphasized probabilities of gross negligence in the operation of the Anderson car and we cannot say that this was harmless error under the evidence in this case.

The court ruled correctly on the matters in the plaintiff's assignments of cross error. It properly rejected the testimony as to the sleeping pills in Mrs. Anderson's possession because there was no proof or admissible inference that she had taken such pills on this trip; and also the testimony as to statements by Ryland Smith to the effect that Mrs. Anderson must have fallen asleep, which were only expressions of opinion.

For the reasons stated the judgment appealed from is reversed and the case is remanded for a new trial.

*Reversed and remanded.*