# Richmond

ELIZABETH S. FINNEY v. MARY ELIZABETH FINNEY.

April 23, 1962.

Record No. 5403.

Present, Eggleston, C. J., and Buchanan, Whittle, Snead, l'Anson and Carrico, JJ.

*John B. Preston* (*E. Page Preston; Preston & Preston,* on brief), for the plaintiff in error.

*Stanley E. Sacks* (*Sacks, Sacks & Kendall,* on brief), for the defendant in error.

BUCHANAN, J., delivered the opinion of the court.

This action was instituted by the plaintiff, Mary Elizabeth Finney, against Elizabeth S. Finney, defendant, to recover damages for injuries suffered by the plaintiff while riding as a guest in an auto-

mobile driven by the defendant, her mother-in-law. A jury returned a verdict for the plaintiff, on which the court entered judgment from which the defendant has appealed. The controlling question is whether there was sufficient evidence to support the verdict, *i.e.,* to establish that the defendant was guilty of gross negligence.

The accident occurred about 6:30 p.m., in daylight, May 27, 1960, in the intersection of Llewellyn avenue and 26th street, in the city of Norfolk. Llewellyn avenue is a four-lane street running north and south, while 26th street has three lanes and runs east and west. The speed limit on both streets is 25 miles. They intersect at right angles and a signal light hangs over the center of the intersection, designed to give the usual traffic signals, but at the time of this accident the red light facing southbound traffic on Llewellyn was out and did not function to warn southbound vehicles.

The defendant was driving south on Llewellyn and collided in the intersection with a truck going east on 26th street operated by Herbert M. Watson, who was joined as a defendant in the action, but the jury acquitted him of fault and he was dismissed.

Just prior to the accident the defendant left her home on 31st street, in Norfolk, to drive downtown to a bank. The plaintiff, who had just arrived for a visit, went along for the ride, taking her 1½ year old daughter with her. They stopped on the same street, picked up Barbara Williams, and drove on into Llewellyn avenue, all on the front seat. The plaintiff, with her child on her lap, sat next to the defendant and Barbara Williams was next to them on the right.

On entering Llewellyn avenue the defendant turned south toward 26th street. She drove at a speed which the plaintiff could not estimate because she did not drive a car but which she said was a reasonable speed. Plaintiff's witness Phipps, who was following the Finney car three or four car lengths behind it, said its speed was about the same as his own, somewhere between 25 and 30 miles. Plaintiff's witness Barbara Williams testified that from her own driving experience of about two months she would say it was about 30 or 35. The defendant did not believe she was exceeding 25. There was no other evidence as to speed.

Barbara Williams testified that when they were about two car lengths from the intersection she said something to Mary Elizabeth Finney, the plaintiff, about how much her little girl had grown, whereupon the defendant looked over at her, looked down at the child for several seconds "and we hit". She said the defendant "did not look back up, I don't think, until after we had already hit".

After the accident the defendant told her she did not see the truck coming and did not see the traffic light. She, the witness, had already noticed it was burned out, she said, and assumed that the defendant would slow down as she approached,—"I glanced up just as we got to it and saw the truck coming, and we hit." They were almost right up on it, she said, and they collided in the middle of the intersection.

Watson, driver of the truck, said he did not see defendant's car until the moment of impact. As he drove east along 26th street and when he was a block away from the intersection he noticed the traffic light facing him at the intersection was red and saw two cars stopped in front of him. The light turned green well before he got to the intersection, the two cars proceeded into the intersection and he did also. When the car immediately in front of him started he was three or four car lengths back of it and got probably within 20 feet of it or closer as he followed into the intersection at less than 20 miles an hour. During that time he saw a car pull up on his right on Llewellyn and stop. He could not say he ever looked to his left but his vision in that direction, from which the defendant came, was somewhat obstructed by a hedge along the west side of Llewellyn and a large house at the northwest corner of the intersection.

The witness Phipps, who, as stated, was following three or four car lengths behind defendant's car, testified that he observed the traffic light being out and that traffic headed north had stopped. There was, he said, no light showing at all. He first noticed it when he was about two blocks away. He slowed down to check to see, heard a commotion, and the car and truck collided. He did not see the truck until he heard the impact. The hedge at the corner along his right-hand side of Llewellyn and the large house there made it a pretty blind corner. It looked like the defendant tried to turn down 26th street after she saw the truck.

The plaintiff did not see the truck. She did not see anything, she said. They were just driving along talking and she wasn't paying any attention to the road.

The defendant, called and examined by the plaintiff as an adverse witness, testified she was familiar with Llewellyn avenue and knew it was a through street except where there were signal lights, and that all cross-traffic was required to stop on the streets other than where the traffic lights were. As she drove along Llewellyn she was looking for a stop light and when she came to it she was going to turn to go to the bank. She knew there was a traffic light at 26th

street, but she did not realize she was down that far, and not seeing any light or anything telling her not to go, she drove on as she had at the previous streets. She thought she was looking straight ahead the whole time. It was possible that she turned and looked at the child but she did not remember doing so. She could not tell why she did not see the traffic signal hanging over the intersection,—"You just don't see a light that is out," she said. "I was looking for a stoplight. Had it been burning like it should have been there never would have been an accident." She could not remember seeing the truck at all before the impact.

In response to questioning by Watson's counsel, she said that as she approached the intersection she assumed there was a stop sign on the side street, and that traffic coming on that street would yield the right of way.

The evidence as thus fully stated is not sufficient to convict the defendant of gross negligence.

This that was said by Mr. Justice Miller in *Lloyd* v. *Green,* 194 Va. 948, 954, 76 S. E. 2d 190, 194, applies here:

"The usual indicia of gross negligence such as purposeful recklessness, deliberate inattention to known dangers, conscious and intended violation or rash disregard of traffic laws, or like purposeful misconduct, are wholly lacking on the part of defendant in the circumstances attending this accident."

The failure to be alert and observant and to operate an automobile skillfully and at low speed under all conditions may in some instances amount to lack of ordinary care; "but such lack of attention and diligence, or mere inadvertence, does not amount to wanton or reckless conduct, or constitute culpable [gross] negligence for which defendant would be responsible to an invited guest." *Young* v. *Dyer,* 161 Va. 434, 440-1, 170 S. E. 737, 739; *Chappell* v. *White,* 182 Va. 625, 629-30, 29 S. E. 2d 858, 860; *Lloyd* v. *Green, supra,* 194 Va. at 954, 76 S. E. 2d at 194.

We have said in a number of cases that gross negligence is that degree of negligence which shows an utter disregard of prudence, amounting to complete neglect of the safety of another, such as to be shocking to reasonable men; that it differs from ordinary negligence in degree; that whether it has been proved depends on the facts and circumstances in each case, and each case is governed by its own facts. If the evidence is such that reasonable men should not differ as to what is proved, the question is one of law for the court. *Kennedy* v. *McElroy,* 195 Va. 1078, 1081, 81 S. E. 2d 436, 439.

It is unnecessary to review any of our many cases in which the facts have been held to place the decision on one side or the other of the dividing line, not always easy to establish, between ordinary negligence and gross negligence. In none has it been held that evidence which proves no more than does that above recited is enough to establish gross negligence.

We said recently in *Watson, Adm'x* v. *Virginia Elec., Etc., Co.,* 199 Va. 570, 577, 100 S. E. 2d 774, 779, that generally negligence of all kinds is a question for the jury and should not be taken from them " 'unless there is a plain deviation from the evidence or it is palpable that the jury have not drawn the correct inference from the facts.' "

The present case falls within the qualification. It is clear to us that the jury did not draw the correct inference and that their verdict was not supported by the evidence. The evidence here proved no more than simple negligence on the part of the defendant. There was nothing alarming in the speed at which she was driving. The plaintiff herself thought it was reasonable speed. She had in mind that she would drive to the first traffic light and there turn to go to the bank. She knew she was guarded by stop signs at all the streets up to that point and when no red light was showing at the intersection she failed to observe that the situation there was different. Had she been more attentive she probably would have noticed the overhanging object from which the light should have been shining, or have been put on guard by the stopped vehicles on the far side of the intersection, or have seen in time the truck as it came from behind the house and hedge on the corner; or even the two cars that had crossed in front of the truck which the witness Phipps, coming behind the defendant, did not see. But her failure in these respects amounted to no more than ordinary negligence and certainly did not display an utter disregard of prudence amounting to complete neglect of the safety of her daughter-in-law and grandchild, such as to be shocking to reasonable men.

The judgment appealed from is reversed and final judgment will be entered here for the defendant.

*Reversed and final judgment.*