COURT OF APPEALS OF VIRGINIA

Present: Judges Russell, Malveaux and Senior Judge Clements
Argued by teleconference

**PUBLISHED**

MARK SPENCER CADY

v.     Record No. 1595-19-4

COMMONWEALTH OF VIRGINIA

OPINION BY
JUDGE MARY BENNETT MALVEAUX
AUGUST 11, 2020

FROM THE CIRCUIT COURT OF FAUQUIER COUNTY
Herman A. Whisenant, Jr., Judge Designate

Cary S. Greenberg; Timothy R. Bradley (Caroline E. Costle;
GreenbergCostle, PC, on briefs), for appellant.

Sharon M. Carr, Assistant Attorney General (Mark R. Herring,
Attorney General, on brief), for appellee.

Mark Spencer Cady ("appellant") was convicted in a jury trial of misdemeanor reckless

driving, in violation of Code § 46.2-852. The trial court imposed a sentence of three months in jail

and a $2,500 fine, following the jury's recommendation. On appeal, appellant argues that the

evidence was insufficient to support his conviction. For the reasons that follow, we agree.[1]

BACKGROUND

"In accordance with familiar principles of appellate review, the facts will be stated in the

light most favorable to the Commonwealth, the prevailing party at trial." Gerald v.

Commonwealth, 295 Va. 469, 472 (2018) (quoting Scott v. Commonwealth, 292 Va. 380, 381

(2016)). In doing so, we discard any of appellant's conflicting evidence, and regard as true all

---

[1] Appellant's petition for appeal contained three assignments of error. This Court granted
all three, but appellant has elected to proceed only on his first assignment of error, alleging that
the evidence was insufficient to support his conviction for reckless driving.

credible evidence favorable to the Commonwealth and all inferences that may reasonably be drawn from that evidence. Id. at 473.

On November 1, 2018, at approximately noon, appellant was driving to work in a Ford Fusion sedan. He was on Route 605 in Fauquier County. At the same time, Richard McElroy was driving a large, roll-off Waste Management truck in the opposite direction on the same road. McElroy characterized Route 605 as "[r]esidential and farm split," and described the weather that day as "[c]lear" with "[n]ice blue skies." As he drove, McElroy saw a large, burgundy motorcycle stopped ahead in the opposite lane, waiting to make a left turn. The motorcycle had its left turn signal on, and its front wheel was partially turned. McElroy slowed, unsure if the driver was going to turn across in front of him or wait until McElroy passed.

As McElroy made eye contact with the motorcycle's driver, later identified as Raleigh Gary Nelson,[2] he noticed a Ford Fusion approaching the motorcycle from behind and "not slowing down" or swerving. McElroy saw the car hit the motorcycle. He did not hear anything before the impact of the two vehicles. McElroy testified that just a few seconds passed between when he first saw the car and when it hit the motorcycle. After the impact, Nelson's helmet hit the windshield of McElroy's truck.

McElroy braked, stopped his truck on the side of the road, and ran to the Ford Fusion. He noticed "pieces and parts" along the roadway as he ran. The Fusion's door was open. The driver, whom McElroy identified at trial as appellant, was "dazed" and fumbling for his phone on the passenger side floorboard. Appellant looked at McElroy and asked, "What happened?" McElroy told appellant to go wait in a grassy area until police arrived.

McElroy next approached Nelson to check on him. He testified that Nelson was wearing jeans and a lightweight jacket and that he was not wearing any bright or reflective clothing.

---

[2] The record frequently misspells Mr. Nelson's first name as "Riley."

Nelson had no pulse and was not moving or breathing. Although 911 was called to assist, Nelson died as a result of his injuries sustained in the crash.

Virginia State Police Trooper Mark Brill investigated the accident. He testified it was a clear day with no obstructions in the roadway that would have prevented appellant from seeing the motorcycle. Brill also testified there was a slight dip in the road that could impact visibility for drivers traveling toward the site of the accident. However, he indicated that beyond the dip, there was a flat, unobstructed stretch of road for approximately 443 feet to Nelson's mailbox, where the impact occurred. Brill testified that Nelson was six feet four inches tall and weighed approximately 280 pounds and that seated on his motorcycle, Nelson's helmet would have been five or six feet off the ground.

After speaking with appellant, Trooper Brill determined that there were no mechanical problems with appellant's vehicle. Appellant indicated he was traveling at a speed of between forty and forty-five miles per hour.[3] Brill testified at trial that it would have taken appellant approximately one minute and twenty-five seconds to drive from his home to the site of the accident.

Appellant gave Brill permission to look through his phone, and Brill found that the phone had not been in use at the time of the collision. The phone did show that appellant had called 911 after the accident. Brill also searched appellant's car at the scene and found no bags, beverages, GPS or navigation devices, food, maps, or electronic devices such as an iPad. Appellant did not identify any obstructions that would have prevented him from seeing the motorcycle, and he provided no explanation why he would have been unable to see the motorcycle. Brill testified that he had no indication appellant was distracted while driving. Brill also stated that there are

---

[3] The speed limit on Route 605 is forty-five miles per hour. Appellant's actual speed immediately prior to the accident was forty-seven miles per hour, according to his car's data recorder.

various causes of motorcycle accidents, one of which is "that the driver of the car just didn't see the motorcycle[.]"

Trooper Brill later returned to the accident scene and set up a three-foot cone on a ladder, representing Nelson's height as he sat on his motorcycle, to determine the visibility of the motorcycle from various vantage points. Brill testified that from the "dip" in the road 693 feet away from the accident site, he could clearly see the cone with no obstructions. He indicated that at a speed of forty-five miles per hour, it would have taken appellant about ten seconds to reach the cone from the dip in the road.

Brill acknowledged that appellant is five feet five inches tall and was driving a "low-seating car," so he would have had "less of a visual field" coming out of the dip. He stated that it was a little windy that day and that there was some debris and a few leaves blowing around. He also testified that the data recorder from appellant's car established that appellant was not weaving prior to the collision and that he was keeping a constant speed, both of which indicated that appellant was not distracted.

Sergeant Phillip Thomas of the Virginia State Police photographed appellant's car. He did not see any bags, food, drinks, electronic devices, or anything else that might have distracted appellant while he was driving.

Virginia State Police Sergeant Brent Coffey, a crash data recovery and retrieval technician and analyst, was able to obtain data from the Ford Fusion. Based on the recovered data, Coffey was able to determine that five seconds before the accident appellant's speed was "47.5 [miles per hour]. It's basically consistent. It drops down at two and a half seconds [before the accident] to 46.9. . . . [T]hen it goes back up to 47.5 consistently. At impact it's 47.4 miles per hour." Based on this information, Coffey indicated that for at least half a second before impact, appellant took his foot off the accelerator. Given the limited data, Coffey could only determine that appellant

used the brake at the time of impact. Based on the "concept of perception and reaction time," the "tables of Virginia," and the crash data, Coffey calculated that appellant perceived the motorcycle two seconds prior to impact.

Dr. Jonathan Flombaum testified for appellant and was recognized as an expert in the field of cognitive psychology, limited to his own research. Flombaum described for the jury the concept of "situational blindness," which is "the phenomenon of looking somewhere but failing . . . to recognize or notice or process exactly what's there." He characterized the principle as "a scientific fact."

Dr. Flombaum discussed research specifically applying situational blindness to motorcycle accidents, "because researchers have noticed that the statistics for motorcycle accidents are atypical compared to other types of vehicle accidents." Flombaum testified about a specific study he had conducted, in which subjects were placed in a driving simulator, asked to look for traffic signs, and then unexpectedly presented with a motorcycle. If the color of the motorcycle differed from the color of the signs they were looking for,

> between 40 and 60 percent of subjects failed to press the brakes for over 5 seconds. And some subjects . . . never pressed the brakes, and two subjects even failed to press the brakes after colliding with the motorcycle.
> So the conclusion of the study was that there was a large . . . incidence of situational blindness in this driving simulator.

Dr. Flombaum testified that situational blindness is "more likely to occur when people are performing tasks that require engagement, that they're aware require engagement, but also that they have experience performing." Finally, Flombaum stated that "when it comes to driving we think that situational blindness is more likely to occur when people are driving on familiar roads at familiar times of day."

The jury convicted appellant of reckless driving. This appeal followed.

ANALYSIS

Appellant argues the evidence was insufficient to support his conviction for reckless driving.

"When reviewing the sufficiency of the evidence, '[t]he judgment of the trial court is presumed correct and will not be disturbed unless it is plainly wrong or without evidence to support it.'" Smith v. Commonwealth, 296 Va. 450, 460 (2018) (quoting Commonwealth v. Perkins, 295 Va. 323, 327 (2018)). "In such cases, '[t]he Court does not ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" Secret v. Commonwealth, 296 Va. 204, 228 (2018) (alteration in original) (quoting Pijor v. Commonwealth, 294 Va. 502, 512 (2017)). "Rather, the relevant question is, upon review of the evidence in the light most favorable to the prosecution, whether *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Id. (quoting Pijor, 294 Va. at 512). "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'" Chavez v. Commonwealth, 69 Va. App. 149, 161 (2018) (quoting Banks v. Commonwealth, 67 Va. App. 273, 288 (2017)).

"[I]n circumstantial evidence cases, the reasonable doubt standard requires proof 'sufficiently convincing to exclude every reasonable hypothesis except that of guilt.'" Kelly v. Commonwealth, 41 Va. App. 250, 258 (2003) (*en banc*) (quoting Coleman v. Commonwealth, 226 Va. 31, 53 (1983)). However, "whether an 'alternative hypothesis of innocence is reasonable is a question of fact and, therefore, is binding on appeal unless plainly wrong.'" Id. at 259 (quoting Stevens v. Commonwealth, 38 Va. App. 528, 535 (2002)).

Code § 46.2-852 states: "Irrespective of the maximum speeds permitted by law, any person who drives a vehicle on any highway recklessly or at a speed or in a manner so as to endanger the life, limb or property of any person shall be guilty of reckless driving." "The word

'recklessly' as used in the statute imparts a disregard by the driver of a motor vehicle for the consequences of his act and an indifference to the safety of life, limb or property." Powers v. Commonwealth, 211 Va. 386, 388 (1970) (interpreting Code § 46.1-189, the predecessor statute to Code § 46.2-852). "The essence of the offense of reckless driving lies not in the act of operating a vehicle, but in the manner and circumstances of its operation." Id. "Factors tending to show recklessness include erratic driving, 'the likelihood of injury to other users of the highways,' lack of control of the vehicle, driving in excess of the speed limit, 'dangerous driving behavior,' intoxication, and noncompliance with traffic markers." Blevins v. Commonwealth, 63 Va. App. 628, 635 (2014) (first quoting Mayo v. Commonwealth, 218 Va. 644, 648 (1977); then quoting Crest v. Commonwealth, 40 Va. App. 165, 172 (2003)).

In a statute "contain[ing] the word negligently, a *mens rea* requirement must be read into it." Mosby v. Commonwealth, 23 Va. App. 53, 59 (1996); see also Maye v. Commonwealth, 213 Va. 48, 49 (1972) (noting that "such requirement will be read into the statute by the court when it appears the legislature implicitly intended that it must be proved"). A criminal statute, such as Code § 46.2-852,

> requires proof of a greater degree of negligence than is required in a civil action. "The negligence required . . . must be more than the lack of ordinary care and precaution. It must be something more than mere inadvertence or misadventure. It is a recklessness or indifference incompatible with a proper regard for human life."

Mosby, 23 Va. App. at 59 (quoting Bell v. Commonwealth, 170 Va. 597, 611 (1938)). Thus, conviction for reckless driving requires a *mens rea* of a knowing disregard of a danger to others and proceeding with indifference to that danger.

"The difference between the terms 'recklessly' and 'negligently' . . . is one of kind, rather than of degree. Each actor creates a risk of harm. The reckless actor is *aware* of the risk and disregards it; the negligent actor is not aware of the risk but should have been aware of it."

Tubman v. Commonwealth, 3 Va. App. 267, 275 (1986) (quoting 2 C. Torcia, Wharton's Criminal Law § 168 (14th ed. 1979)). To establish criminal negligence, "[i]t must be shown that a homicide was not improbable under all of the facts existing at the time, and that the knowledge of such facts should have had an influence on the conduct of the offender." Id. at 274 (quoting Bell, 170 Va. at 611.

"The mere happening of an accident does not give rise to an inference of reckless driving." Powers, 211 Va. at 388. In Powers, the defendant was convicted of reckless driving after his car traveled an erratic course for more than 900 feet and struck trees with such force that the motor was wrenched from it and the defendant was thrown clear and injured. Id. On appeal, the Commonwealth argued that reckless driving could be inferred from these facts. Id. The Supreme Court of Virginia disagreed and reversed the conviction, noting that it could not tell "from the evidence in this record how and why the accident happened." Id. at 389.

A review of reckless driving convictions affirmed in the Commonwealth supports appellant's position that to sustain his conviction, more evidence is required than the mere fact that he hit Nelson's motorcycle.

In Blevins, the appellant was driving his pickup truck ten to fifteen miles over the posted speed limit on a rainy night with limited visibility. Blevins, 63 Va. App. at 632. A witness testified that as he drove past the appellant, he heard the appellant "rev" his engine. Id. at 631. The appellant's truck then crossed into the witness' lane and hit the witness' car, killing the passenger. Id. at 631-32. This Court cited all of those facts as circumstances tending to support the jury's verdict of reckless driving. Id. at 636.

In Crest, the defendant caused a four-car accident, in which one driver was killed. Crest, 40 Va. App. at 168. Two drivers involved in the accident testified that the weather was clear and that they could see that traffic was very heavy ahead of them. Id. at 168-69. There was also

testimony from another witness that the defendant had been driving aggressively and speeding approximately fifteen minutes before the accident. Id. at 170. This Court held that the evidence "allowed the fact finder to infer that [the] appellant was not operating her vehicle in a safe manner immediately prior to the accident." Id. at 175.

In Kennedy v. Commonwealth, 1 Va. App. 469, 470 (1986), the evidence showed that the defendant drove off the road late at night. He admitted that he had been driving for eight hours and had pulled over earlier due to fatigue. Id. at 471. The Court held that "the evidence showed more than the mere happening of an accident. There was sufficient evidence, without resort to speculation and conjecture, for the court to find [the defendant] guilty beyond a reasonable doubt of the offense of reckless driving." Id. at 472. The trial court had enough evidence to infer that the defendant fell asleep at the wheel. Id. Further, as an alternate ground for the conviction, the defendant had testified that his car was having tire and steering problems. Id. at 473. As such, he was "on notice" of a defect with his vehicle that could have interfered with his ability to control it, and thus by continuing to operate it the defendant had breached his "duty to use ordinary care to keep his vehicle under proper control." Id. at 473 (quoting Meeks v. Hodges, 226 Va. 106, 109 (1983)).

None of the factors listed in the previous cases is present in the case now before us. There is no evidence that appellant was driving erratically. In fact, McElroy testified that appellant was not weaving in his lane, and data from appellant's car established that he was driving straight ahead at a constant speed. There was no evidence of any mechanical problems with appellant's car. Appellant made no statements tending to show inattentiveness, intoxication, or fatigue. There *was* evidence that appellant had not been eating or using his phone right before the accident. There was also evidence that the motorcyclist was dressed in dark clothing.

The Commonwealth argues on brief that despite the absence of evidence that appellant was "distracted by conduct which often contributes to accidents, such as using an electronic device, eating, or generally failing to abid[e] by the speed limit or other traffic signage," appellant "nonetheless drove recklessly because he failed to actively engage and keep a proper lookout as he undertook his routine task of commuting to work."[4] This is essentially an argument that simply because appellant hit a motorcycle, he must have been driving recklessly. To the extent that the Commonwealth alleges that appellant *should have been* aware of the danger to others, that argument supports a theory of simple negligence, not recklessness.

There is no dispute that appellant did not see the motorcycle. The Commonwealth acknowledged at oral argument that its position is that circumstances were such that the fact that appellant did not see the motorcyclist is, *ipso facto*, inattentive. Therefore, appellant must have been driving recklessly. The Commonwealth argues that the fact that appellant was driving forty-seven miles per hour without paying full attention showed the requisite criminal disregard. However, it is incumbent upon the Commonwealth to show that disregard through evidence of appellant's actions. Appellant's failure to stop before he hit the motorcycle establishes simple negligence, not the recklessness required to sustain his conviction. A conviction for reckless driving requires criminal negligence, and appellant's conduct did not rise to that level.

In this case, the facts do not support a conviction for reckless driving. There were no indicia of recklessness. Appellant was driving at a constant speed, a mere two miles over the posted speed limit, and he was not swerving. Trooper Brill and Sergeant Thomas saw no evidence of any distractions in appellant's car, and there was evidence that appellant's cell phone

---

[4] We note that in Lewis v. Commonwealth, 211 Va. 684, 687 (1971), a case in which an automobile fatally struck a pedestrian, our Supreme Court noted that "[w]e have never held that mere failure to keep a proper lookout constitutes criminal negligence." However, the Court also "d[id] not suggest that failure to maintain a proper lookout may never constitute criminal negligence." Id. at 688.

was not in use in the moments before the accident. There is no indication of any erratic or wrongful behavior. The fact of the accident is the only evidence before us. While the accident was tragic and resulted in the death of an innocent man, the Commonwealth presented no evidence about why appellant did not see the motorcycle.

"We have no way of determining from the evidence in this record how and why the accident happened." Powers, 211 Va. at 389. The Supreme Court of Virginia has ruled that a conviction for reckless driving cannot be based upon "speculation and conjecture" as to what caused an accident. Id. The dearth of evidence establishing recklessness in this case required the fact-finder to improperly speculate as to what caused appellant to strike the motorcycle. Moreover, the facts in the case, even viewed in the light most favorable to the Commonwealth, simply do not rise to the level of criminal negligence. As such, we conclude that the evidence did not prove that appellant was guilty of reckless driving.

CONCLUSION

Because we find that the evidence was insufficient to support appellant's conviction under Code § 46.2-852, we reverse his conviction for reckless driving.

Reversed and dismissed.

Russell, J., dissenting.

In overturning appellant's conviction, the majority necessarily finds that a rational jury could not conclude from the evidence that appellant's conduct evinced "a disregard . . . for the consequences of his act and an indifference to the safety of life, limb, or property[,]" and thus, satisfied the recklessness requirement of Code § 46.2-852. Blevins v. Commonwealth, 63 Va. App. 628, 635 (2014) (quoting Spencer v. City of Norfolk, 271 Va. 460, 463 (2006)). The majority holds that a rational fact finder can only conclude that appellant was merely negligent and that, "to sustain his conviction, more evidence is required than the mere fact that he hit [the] motorcycle." Supra at 8. Although the majority is correct that the *mere* fact of an accident is insufficient to meet the Commonwealth's burden, see Powers v. Commonwealth, 211 Va. 386, 388 (1970), the specific facts and circumstances that lead to and cause an accident often will be. Given the deference we owe the jury as fact finder and the fact that the evidence, properly viewed, establishes far more than the mere fact of an accident, I conclude that the evidence was sufficient to support the jury's verdict, and thus, was sufficient to support appellant's conviction. Accordingly, I respectfully dissent.

At the outset, it is important to recognize that a party challenging the sufficiency of the evidence to support a jury's verdict faces a high burden. A jury's verdict comes to an appellate court with a presumption of correctness and only may be reversed if it is plainly wrong or no evidence supports it. Nelson v. Commonwealth, 50 Va. App. 413, 417 (2007). The question is not whether this Court or some other fact finder would have reached a different conclusion, but rather, "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Chavez v. Commonwealth, 69 Va. App. 149, 161-62 (2018) (some internal quotation marks omitted) (quoting Banks v. Commonwealth, 67 Va. App. 273, 288 (2017)). Accordingly,

- 12 -

an appellate court in this circumstance "considers the evidence in the light most favorable to the Commonwealth, . . . granting to it all reasonable inferences that flow from the evidence." Id. at 161 (quotation marks and citations omitted). This requires that we discard and reject any evidence of the accused that conflicts with the Commonwealth's evidence.[5] Id.

So viewed, the evidence allows a reasonable fact finder to conclude that the victim would have been clearly visible to any driver keeping anything even approximating a reasonable lookout. At six feet, four inches tall and weighing nearly 300 pounds, the victim was a large man. He was sitting on a "large motorcycle," which was metallic burgundy/red in color. He was legally in the travel lane with his turn signal on and visible. It was a clear, sunny day around noon. There were no environmental conditions that obstructed other drivers from seeing the victim.

The roadway on which the victim's motorcycle was sitting was straight and, for the last 443 feet before the victim's location, flat. Although there was an elevation change in the road more than 443 feet from where the motorcycle was located, it was not sufficient to prevent the motorcycle from being seen. Trooper Brill's post-accident investigation revealed that a traffic cone, which was much smaller than the victim and his motorcycle and did not have a flashing turn signal, was clearly visible to a driver at a distance of nearly 700 feet, more than one eighth

---

[5] Appellant makes much of the testimony of Dr. Flombaum, whose testimony the majority summarizes. As the trier of fact and the judge of the credibility of the witnesses, the jury was free to "accept or reject [his] testimony in whole or in part." Perkins v. Commonwealth, 31 Va. App. 326, 331 (2000). This principle applies with equal force to expert witnesses as it does to fact witnesses. Street v. Street, 25 Va. App. 380, 387 (1997) (*en banc*) (holding that "the fact finder is not required to accept the testimony of an expert witness" or witnesses even when such testimony is the only evidence on a particular subject). Accordingly, given the standard of review, Dr. Flombaum's testimony can provide no basis for reversing appellant's conviction.

of a mile. Given the speed that appellant was driving and the other conditions, appellant had an unobstructed view of the victim for ten seconds before impact.

Despite this, appellant claims not to have seen the motorcycle. His actions, or lack thereof, are consistent with that position. Appellant's speed was, as noted by the majority, essentially "constant[,]" and he took no evasive action, driving straight into the victim without changing path or even applying his brakes until after impact.

Applying their common sense and experience to these facts, the jury reasonably could and did conclude that the reason appellant plowed into the victim and his motorcycle without taking any evasive action is that he was not looking at the road and had not been for some time. Unlike cases in which a split-second, momentary failure to keep a lookout has been held not to constitute more than ordinary negligence, cf. Lewis v. Commonwealth, 211 Va. 684, 687 (1971) (holding that a momentary failure to maintain a proper lookout does not, without more, constitute criminal negligence); Finney v. Finney, 203 Va. 530, 533 (1962) (recognizing that a momentary "failure to be alert and observant" constitutes ordinary as opposed to gross negligence), the evidence properly viewed supports a conclusion that appellant was not looking at the road for at least ten seconds and for over one eighth of a mile. Given his complete lack of evasive action and the absence of any braking prior to impact, the evidence supports a conclusion that appellant's failure to maintain a lookout was lengthy, total, and complete. The jury was within its province to find that this conduct evinced "a disregard . . . for the consequences of his act and an indifference to the safety of life, limb, or property[,]" and thus, satisfied the recklessness requirement of Code § 46.2-852. Blevins, 63 Va. App. at 635 (quoting Spencer, 271 Va. at 463).

My disagreement with the majority in this regard is best illustrated by our different views of the correct application of the Supreme Court's decision in Lewis, 211 Va. at 684, to the facts of this case. As the majority recognizes, in Lewis, the Supreme Court noted both that "[w]e have

never held that mere failure to keep a proper lookout constitutes criminal negligence[,]" id. at 687, but also made clear that it had not concluded "that failure to maintain a proper lookout may never constitute criminal negligence." Id. at 688. The majority views this case as falling within the first statement from Lewis, with the evidence failing to establish the degree of recklessness underlying criminal negligence, while I view it as falling within the second, a case where a failure to keep a lookout is sufficient to establish the recklessness that gives rise to criminal negligence. I do so because Lewis based its conclusion that recklessness was not established at least in part on there being no evidence of "how far ahead Lewis could or should have seen [the victim because] the record is silent as to the nature and extent of the view." Id. at 687. Based on the evidence provided by Trooper Brill, what was absent in Lewis is present here and establishes that appellant failed to keep a lookout for at least ten seconds. As noted above, a fact finder reasonably could conclude that such a complete and total failure to keep a lookout evinces "a disregard . . . for the consequences of his act and an indifference to the safety of life, limb, or property[,]" and thus, satisfied the recklessness requirement of Code § 46.2-852. Blevins, 63 Va. App. at 635 (quoting Spencer, 271 Va. at 463).

My disagreement with the majority's application of the law to the facts found by the jury in this case should not be read as rejecting certain general principles related to prosecutions under Code § 46.2-852 upon which the majority relies. I agree with the majority that the fact the victim tragically died does not affect the quantum of proof required to establish the necessary recklessness. Although, by definition, the victim's death establishes that appellant operated his vehicle "in a manner so as to endanger the life, limb, or property of any person[,]" Code § 46.2-852, it does not by itself establish the requisite level of recklessness. A tragic result does not alleviate the Commonwealth's burden to offer evidence sufficient to establish recklessness as defined in our cases and the decisions of the Supreme Court.

Additionally, I do not disagree with the majority that a momentary failure to keep a lookout is insufficient to establish the requisite recklessness. Here, however, a reasonable fact finder could and did find that appellant's failure to keep a proper lookout was not partial and momentary, but rather, was total, complete, and lasted for at least ten seconds and for more than one eighth of a mile. Because the jury's conclusion that such conduct constitutes recklessness within the intendment of Code § 46.2-852 is a reasonable one and no adverse authority on such facts exists, I would affirm both the jury's determination and appellant's conviction.